1   Thomas J. Salerno
    **STINSON LEONARD STREET, LLP**
2   1850 N Central Ave., Ste. 2100
    Phoenix, AZ 85004
3   Thomas.salerno@stinson.com

4   Daren R. Brinkman (Limited Admission)
5   Laura J. Portillo (Limited Admission)
    Kevin C. Ronk (Limited Admission)
6   **BRINKMAN PORTILLO RONK, APC**
    4333 Park Terrace Drive, Ste. 205
7   Westlake Village, CA 91361
    Tel: 818.597.2992 | Fax: 818.597.2998
8   AZ@brinkmanlaw.com

9
    *Counsel for GH USC Trustee*
10

11              **UNITED STATES BANKRUPTCY COURT**

12                    **DISTRICT OF ARIZONA**

13
                                        |  Chapter 11
14      In Re:                          |
                                        |  Case No.: 2:14-bk-01451-MCW
15      GILBERT HOSPITAL, LLC,          |
                                        |  **DECLARATION REGARDING SERVICE**
16              Debtor.                 |  **OF AND NO OBJECTION TO GILBERT**
                                        |  **HOSPITAL, LLC'S OBJECTION TO**
17                                      |  **McCALLEY PROOF OF CLAIM 173**
18
19                                      |  (Related Docket Entries 956 & 980)
20                                      |  (Related Proof of Claim "POC" 173)

21

22          I, Kevin Ronk, an attorney with Brinkman Portillo Ronk, APC, counsel to David

23   Gottlieb, Creditor Trustee of the Gilbert Hospital Unsecured Creditor Trust (the "GH USC

24   Trustee") declare under penalty that the following is true and correct to the best of my

25   knowledge and belief.

26
27          On June 19, 2015, Gilbert Hospital, LLC ("Gilbert"), through its insolvency counsel

28   at the time, Andante Law Group, PLLC, filed *Debtor's Claim Objection to S. & B.*

*McCalley Proof of Claim and Notice of Bard Date for Objection* (the "Claim Objection") in the above-captioned bankruptcy case at Docket Number 956. A true and correct copy of the Claim Objection as it appears on the Clerk's Docket is attached hereto as Exhibit "A". A certification appears at pages six and seven of the Claim Objection indicating that the Claim Objection was mailed by ECF Notice and electronic mail to certain individuals and that it was served by U.S. Mail on Geoffrey M. Khotim, Nussbaum Gillis & Dinner, P.C., 14850 N. Scottsdale Road, Ste 450, Scottsdale, AZ 85254, attorneys for Steve and Bonnie McCalley.

The Claim Objection lacks a notice of bar date, however, on July 1, 2015, Gilbert filed the *Notice of Bar Date for Responses to Debtor's Objections to Proofs of Claim* (the "Notice of Bar Date") at Docket Number 980. A true and correct copy of the Notice of Bar Date as it appears on the Clerk's Docket is attached hereto as Exhibit "B". Pursuant to Rule 3007-1. A certification appears at pages four through six of the Notice of Bar Date indicating that the Notice of Bar Date was mailed by ECF Notice and electronic mail to certain individuals and that it was served by U.S. Mail on, among others, Geoffrey M. Khotim, Nussbaum Gillis & Dinner, P.C., 14850 N. Scottsdale Road, Ste 450, Scottsdale, AZ 85254 attorneys for Steve and Bonnie McCalley.

Pursuant to Rule 3007-1, Local Rules of Bankruptcy Procedure for the District of Arizona, a claimant is permitted 14 days from the service of a claim objection to file and serve a response. If a timely response is not filed and served, the objection may be sustained by the court without further notice or hearing.

I have reviewed the Clerk's Docket up through the date of this declaration. I see do not see where a response to the Claim Objection was filed and appears on the Docket.

2

DATED this 13th day of July 2018.

BRINKMAN PORTILLO RONK, APC

By: /s/ Kevin Ronk
Kevin Ronk

Counsel for GH USC Trustee

This is to certify that the foregoing was
e-filed on July 13, 2018 in the United
States Bankruptcy Court,

…and COPIES served the same day via
ECF Notice and Electronic mail as follows:

- **ELIZABETH C. AMOROSI**   Elizabeth.C.Amorosi@usdoj.gov
- **CARLOS M. ARBOLEDA**   arboledac@abfirm.com,
  achavez@abfirm.com,Misty@abfirm.com
- **WALTER J. ASHBROOK**   , sybil.aytch@quarles.com
- **THOMAS C. AXELSEN**   taxelsen@shermanhoward.com,
  afigueroa@shermanhoward.com,TAXELSEN@COX.NET,efiling@sah.com
- **MICHAEL R AYERS**   azcourtorders@hinshawlaw.com
- **EDWARD K. BERNATAVICIUS**   edward.k.bernatavicius@usdoj.gov
- **FAY W. BIDLACK**   fbidlack@jsslaw.com,
  lbourland@jsslaw.com,dsharp@jsslaw.com
- **BRIAN BLUM**   brian@andantelaw.com, teresie@andantelaw.com
- **BRUCE J. BORRUS**   bborrus@foxrothschild.com
- Daren R. Brinkman   daren@brinkmanlaw.com,
  brinkmanlaw@ecf.inforuptcy.com,az@brinkmanlaw.com
- **MICHAEL W. CARMEL**   michael@mcarmellaw.com, sharon@mcarmellaw.com
- **SCOTT B. COHEN**   SBC@ENGELMANBERGER.COM, mkk@eblawyers.com
- **JOSEPH E. COTTERMAN**   joe.cotterman@gknet.com, gjk@gknet.com
- Grant L. Cartwright   gcartwright@maypotenza.com,
  AHarnisch@maypotenza.com,eluna@maypotenza.com
- **DEAN M. DINNER**   dean.dinner@sackstierney.com,
  samanta.rivera@sackstierney.com,Sandra.dousdebes@sackstierney.com,Heidi.schevi
  ng-nelson@sackstierney.com
- **WILLIAM W. FIFE**   william@williamfifelaw.com
- **ROGER R. FOOTE**   rfoote@jacksonwhitelaw.com,
  sswartz@jacksonwhitelaw.com
- **ALEXANDER J GANCAYCO**   alexander.gancayco@nlrb.gov
- **DANIEL E. GARRISON**   dan@andantelaw.com, teresie@andantelaw.com

3

1

- **ANDREW A. HARNISCH**    aharnisch@maypotenza.com, eluna@maypotenza.com

2

- **ROBERT P. HARRIS**    robert.harris@quarles.com, sybil.aytch@quarles.com

3

- **KEITH L. HENDRICKS**    khendricks@law-msh.com, dnavarro@law-msh.com,docket@law-msh.com

4

- **KYLE S. HIRSCH**    kyle.hirsch@bryancave.com, laremus@bryancave.com,carussell@bryancave.com,kara.schrader@bryancave.com

5

- **LAWRENCE D. HIRSCH**    lhirsch@psazlaw.com, ceckert@psazlaw.com

6

- **PATRICK B HOWELL**    phowell@whdlaw.com, tmichalak@whdlaw.com,dprim@whdlaw.com

7

- **Brian D. Huben**    hubenb@ballardspahr.com

- **JONATHAN P. IBSEN**    jibsen@clgaz.com, nfitzpatrick@clgaz.com

8

- **STEVEN D. JEROME**    sjerome@swlaw.com, docket@swlaw.com,mminnick@swlaw.com

9

- **CODY J. JESS**    bkdocket@biz.law

10

- **CAROLYN J. JOHNSEN**    cjjohnsen@dickinsonwright.com, ksanchez@dickinsonwright.com,jhawkins@dickinsonwright.com,psabori@dickinsonwright.com

11

- **ROB A JUSTMAN**    rjustman@meagher.com, vhenderson@meagher.com

12

- **ROBERT M. KORT**    rkort@lrrc.com, awhite@lrrc.com

13

- **LOUIS DANIEL LOPEZ**    llopez@law-msh.com, docket@law-msh.com,kwhite@law-msh.com

14

- **RYAN J. LORENZ**    rlorenz@clarkhill.com, sordonez@clarkhill.com

- **WESLEY S. LOY**    wsl@bowwlaw.com, mjk@bowwlaw.com

15

- **HEATHER ANN MACRE**    ham@aikenschenk.com, slr@aikenschenk.com,baq@aikenschenk.com

16

- **NANCY J MARCH**    nmarch@fclaw.com, sgarcia@fclaw.com

17

- **PERNELL W. MCGUIRE**    pmcguire@davismiles.com, jstoner@davismiles.com,athomas@davismiles.com,klienhard@davismiles.com,efile.dockets@davismiles.com

18

19

- **ADAM D. MELTON**    amelton@tep.com, egalbraith@tep.com

- **KLAUS PETER MUTHIG**    muthigk@mcao.maricopa.gov, geiserr@mcao.maricopa.gov

20

- **LAWRENCE E. PALLES**    lpalles@law-msh.com, docket@law-msh.com

21

- **JILL H PERRELLA**    jperrella@swlaw.com, hblanco-serlin@swlaw.com,docket_tux@swlaw.com

22

- **LISA PETERS**    lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com

23

- **LAURA J PORTILLO**    laura@brinkmanlaw.com

- **DONALD W. POWELL**    d.powell@cplawfirm.com

24

- **WESLEY DENTON RAY**    Ray@SacksTierney.com, Sandra.Dousdebes@sackstierney.com,Bankruptcy@SacksTierney.com

25

- **PHILIP R. RUDD**    Rudd@SacksTierney.com, Bankruptcy@SacksTierney.com

26

- **THOMAS J. SALERNO**    thomas.salerno@stinson.com, lindsay.petrowski@stinson.com,karen.graves@stinson.com

27

- **KATHERINE ANDERSON SANCHEZ**    ksanchez@dickinsonwright.com, jhawkins@dickinsonwright.com,andersonkr70692@notify.bestcase.com

28

1  - **DALE C. SCHIAN**    bkdocket@biz.law
2  - **GERALD L. SHELLEY**    gshelley@fclaw.com, gkbacon@fclaw.com
   - **JOSEPH E. SHICKICH**    jshickich@foxrothschild.com,
     kseabright@foxrothschild.com
3  - **MARK D. SVEJDA**    mark@azrealestatelawyers.com
4  - **BRADLEY D. WEECH**    efile.dockets@davismiles.com
   - **DAVID IRA WEISSMAN**    dweissman@clarkhill.com, dlukas@clarkhill.com
5  - **KURT M. ZITZER**    kzitzer@meagher.com, vhenderson@meagher.com

6

7

8  … and COPES served the same day via
   U.S. Mail as follows:
9

10  Geoffrey Khotim
    Davis Miles McGuire Gardner PLLC
11  14850 N. Scottsdale Road, Ste 450
    Scottsdale, AZ 85254
12

13  Geoffrey Khotim
    Nussbaum Gillis & Dinner, P.C.
14  14850 N. Scottsdale Road, Ste 450
    Scottsdale, AZ 85254
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  - **DALE C. SCHIAN**    bkdocket@biz.law
2  - **GERALD L. SHELLEY**    gshelley@fclaw.com, gkbacon@fclaw.com
   - **JOSEPH E. SHICKICH**    jshickich@foxrothschild.com,
      kseabright@foxrothschild.com
3  - **MARK D. SVEJDA**    mark@azrealestatelawyers.com
4  - **BRADLEY D. WEECH**    efile.dockets@davismiles.com
   - **DAVID IRA WEISSMAN**    dweissman@clarkhill.com, dlukas@clarkhill.com
5  - **KURT M. ZITZER**    kzitzer@meagher.com, vhenderson@meagher.com

6

7

8  … and COPES served the same day via
   U.S. Mail as follows:
9

10 Geoffrey Khotim
   Davis Miles McGuire Gardner PLLC
11 14850 N. Scottsdale Road, Ste 450
   Scottsdale, AZ 85254
12

13 Geoffrey Khotim
   Nussbaum Gillis & Dinner, P.C.
14 14850 N. Scottsdale Road, Ste 450
   Scottsdale, AZ 85254
15

16                                        By: /s/ Haley Pinkston
17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1  Daniel E. Garrison (Bar No. 021495)
2  Jessica Kenney Bonteque (Bar No. 026615)
   **ANDANTE LAW GROUP, PLLC**
3  Scottsdale Financial Center I
   4110 North Scottsdale Road, Suite 330
4  Scottsdale, AZ 85251
5  Phone: (480) 421-9449
   Fax: (480) 522-1515
6  Email: dan@andantelaw.com
   Email: jessica@andantelaw.com
7  *Attorneys for Gilbert Hospital, LLC*

8
                **IN THE UNITED STATES BANKRUPTCY COURT**
9
10                  **FOR THE DISTRICT OF ARIZONA**

    | In Re: | Chapter 11 |
11  | | |
12  | **GILBERT HOSPITAL, LLC,** | **Case No.: 2:14-bk-01451-MCW** |
13  | Debtor. | **DEBTOR'S CLAIM OBJECTION TO S. & B. McCALLEY PROOF OF CLAIM** |
14  | | |
15  | | **AND NOTICE OF BAR DATE FOR OBJECTIONS** |
16

17  TO THE HONORABLE MADELEINE C. WANSLEE, UNITED STATES
18  **BANKRUPTCY JUDGE:**

19          Gilbert Hospital, LLC ("<u>GH</u>" or "<u>Debtor</u>") hereby objects to proof of claim filed by

20  Steve and Bonnie McCalley (together "<u>McCalley</u>") at POC No. 173 ("<u>McCalley Claim</u>").

21  This Objection is made pursuant to applicable Oklahoma state law, 11 U.S.C. § 502 and

22  Federal Rule of Bankruptcy Procedure 3007(a). It is supported by the record of this case,

23  including the docket entries ("DE") identified herein, the exhibits hereto and the following

24  Memorandum of Points and Authorities.

25  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

26  The Debtor objects to the McCalley Claim, based on the following:

27          1.      The McCalley Claim must be disallowed pursuant to Oklahoma law.

28          2.      The McCalley Claim must be disallowed pursuant to 11 U.S.C. § 502(e).

## A. Factual Basis for Objection to McCalley Claim

On July 1, 2014, McCalley filed Proof of Claim 173 in the amount of $31,122.00. McCalley attached a copy of the agreement with Bank SNB that laid out the terms of the limited guaranty from McCalley to Bank SNB (the "Limited Guaranty Agreement"). A true and correct copy of the claim is attached hereto as **Exhibit "A"**.

## B. Law Governing the McCalley Claim and Objections Thereto

The explicit terms found within the Limited Guaranty Agreement state that it "is to be construed in accordance with the laws of the State of Oklahoma." Exhibit A, Limited Guaranty Agreement at ¶ 10. Pursuant this choice of law provision, this Objection analyzes the McCalley Claim for equitable contribution of guaranty under Oklahoma law. As well, this Objection seeks to disallow the McCalley Claim under sections 502(e) of the Bankruptcy Code.

## C. The claims must be disallowed pursuant to Oklahoma Law on Indemnity and Contribution

### 1. Indemnity Law

Under Oklahoma law, the obligation of indemnity arises from either of two general sources: 1) it may arise from an express "contract by which one engages to save another from a legal consequence of the conduct of one of the parties" or 2) it may arise out of a contractual or special relationship between parties and from equitable considerations. 15 Okl.St.Ann. § 421; Thomas v. Williams, 173 Okla. 601 (Okl. 1935); Guidcone America Ins. Co., Inc. v. Shore Ins. Agency, Inc., 259 P.3d 864 (Okl.App.Div.2 2011). McCalley has neither an equitable nor a contractual right to indemnification.

(a) No Contractual Indemnity Exists Between Debtor and McCalley

McCalley neither claimed nor cited any contractual indemnification provision in the Limited Guaranty Agreement requiring Debtor to indemnify McCalley for their guaranty. See Claim 173. The Limited Guaranty Agreement does not expressly establish any contractual indemnification liability against Debtor. In fact, Debtor is not even a party to the Limited Guaranty Agreement as that contract only establishes an agreement as between

the McCalley and Bank SNB.  As such, it is impossible for McCalley to allege an express contractual right to indemnification against Debtor.

(b) No Equitable Indemnity Exists Between Debtor and McCalley

McCalley also did not allege equitable indemnification.  But, if the Court were to give this theory any consideration as a basis for not disallowing the McCalley Claim, Debtor submits that there is also no valid equitable indemnification claim.  Noncontractual indemnity is sometimes referred to as "implied indemnity" and "may arise out of a contractual or special relationship between parties and from equitable considerations." Noble Steel, Inc. v. Williams Brothers Concrete Const. Co., 49 P.3d 766 (Okl.App. 2002). In the tort context, it has been stated that a person "who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter whether contractual relations exist between them or not." Porter v. Norton-Stuart Pontiac-Cadillac of Enid, 405 P.2d 109 (Okl. 1965).  McCalley is not eligible for equitable indemnity because they cannot allege any tort-based liability but only rely on a contract (the Limited Guaranty Agreement) for their equitable indemnity claim.  That is, without an action sounding in tort, there can be no implied indemnity.  Id. (analyzing tort claim where two parties jointly liable to a third party and indemnity awarded under a respondeat superior claim); Daugherty v. Farmers Co-op Ass'n, 790 P.2d 1118 (Okla.App.Div.3 1989)(analyzing equitable indemnity in the context of a exposure to toxic pesticides); Sinclair Oil Corp. v. Texaco, Inc., 94 Fed.Appx. 760 (10th Cir. 2004)(refinery vendor was not required to indemnify purchaser in the context of a hazardous exposure claim).  Thus, Oklahoma case law clearly limits equitable indemnification to tort-based situations.  As a result, McCalley is ineligible for equitable indemnification.

2. **Contribution Law**

Under Oklahoma law, a party who has been found jointly and severally liable in tort may be entitled to contribution.  Okla. Stat. Ann. Tit. 12, § 832(A), (B) (adopting the Uniform Contribution Among Tortfeasors Act of 1978).  Oklahoma's contribution statute says "when two or more person become jointly or severally liable in tort for the same injury

to person...there is a right of contribution among them...No tortfeasor is compelled to make contribution beyond their pro rata share of the entire liability." Id.

The Oklahoma statutory right to contribution is, once again, explicitly limited to tort-based situations. Id. § 832(B)("The right of contribution exists only in favor of a tortfeasor who has paid more than their pro rata share of the common liability..."); see also In re Jones, 804 F.2d 1133 (10th Cir. 1986)(finding that although the source of the relationship between the indemnitee and indemnitor was a contract, the duty itself was grounded in the principles of tort law). On that basis alone, the McCalley Claim must be disallowed.

Furthermore, Oklahoma's contribution statute allows only parties who have "paid more than their pro rata share of the common liability" to seek contribution. Okla. Stat. Ann. Tit. 12, § 832(B); Smith v. Burt, 150 Okla. 34 (Okla. 1931)(finding that 'contribution among guarantors is based upon the equitable principle that, where several parties are equally liable for the same debt, and one is compelled to pay the whole of it, he may have contribution against the others to obtain from them payment of their respective shares'). In this instance, McCalley has not alleged nor proven payment of even one dollar for liability under the Limited Guaranty Agreement. The McCalley Claim is a contingent claim as they have not had to pay the alleged amount nor has a judgment been entered against McCalley. As such, it is impossible for McCalley to have a valid claim for contribution and the McCalley Claim must, therefore be disallowed.

**D.      The McCalley Claim must be disallowed under 11 U.S.C. § 502(e).**

Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> "[t]he Court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that...such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution."

11 U.S.C. § 502(e)(1)(B). The purpose of this section is to prevent contingent, unresolved indemnification or contribution claims from delaying the consummation of a plan of reorganization. In re GCO, LLC, 324 B.R. 459 (Bankr. S.D.N.Y. 2005). A claim will be disallowed under section 502(e)(1)(B) if three requirements are met (1) the claim is for

1   reimbursement or contribution, (2) the party asserting the claim is liable with the debtor on
2   the claim of a creditor, and (3) the claim is contingent at the time of allowance or
3   disallowance.  In re Dant & Russell, Inc., 951 F.2d 246 (9th Cir. 1991).  As explained
4   below, all three requirements are met in this case.

5       First, the McCalley Claim alleges "contribution for guaranty" as a basis for their
6   validity.  See 11 U.S.C. §502(e)(1)(B)(1).  Second, McCalley asserted their contribution
7   claim based on their liability for the guaranty as stated in the terms of the Limited Guaranty
8   Agreement.  See 11 U.S.C. §502(e)(1)(B)(2).  Lastly, the McCalley Claim remains
9   contingent as McCalley has not made any payment to Bank SNB on account of the guaranty
10  debt as specified in the Limited Guaranty Agreement.  See 11 U.S.C. §502(e)(1)(B)(3);
11  Dant, 951 F.2d 246; Cf. In re RNI Wind Down Corp., 369 B.R. 174 (Bankr.D. Del.
12  2007)(holding that claim is not contingent on account of fact that creditor had incurred
13  expenses and debtor's administrator had not adequately established that creditor would not
14  be entitled to indemnification).  Furthermore, Debtor and Bank SNB have proposed a plan
15  that accounts for satisfaction of the debt that forms the basis of the guaranty.  Treatment
16  under the plan will ensure that the McCalley Claim will remain "contingent" as McCalley
17  will not be liable for payment of their guaranty liability.  Kostlan v. Schoenmann, 2014 WL
18  3883221 (9th Cir. BAP 2014)(finding that Bankruptcy Court, which considered the
19  creditors lack of payment on a guaranty-based liability, did not err in finding that claim was
20  "contingent.").  Therefore, the McCalley Claim must be disallowed pursuant to section
21  502(e).

**E.   Conclusion and Requested Relief**

22  Based on the foregoing, the Debtor requests that this Court:

23      (1)    disallow the McCalley Claim; and

24      (2)    grant such further relief as is just and proper under the circumstances of this
25  case.

26  ///

27  ///

28  ///

DATED this 19th day of June, 2015.

                    **ANDANTE LAW GROUP, PLLC**


                    By: */s/ Jessica Kenney Bonteque*
                         Daniel E. Garrison
                         Jessica Kenney Bonteque
                         *Attorneys for Gilbert Hospital, LLC*

This is to certify that the foregoing was
e-filed on June 19, 2015 in the United
States Bankruptcy Court,

...and **COPIES** served the same day via
ECF Notice and electronic mail as
follows:

| | | |
|---|---|---|
| Thomas Axelsen<br>taxelsen@shermanhoward.com | Hillary Barnes<br>hbarnes@asbazlaw.com | Edward Bernatavicius<br>edward.k.bernatavicius@usdoj.gov |
| Mark Chernoff<br>office@azfirm.net | Randy J. Aoyama<br>Michael R. Ayers<br>raoyama@hinshawlaw.com<br>mayers@hinshawlaw.com | Keith Hendricks<br>khendricks@law-msh.com |
| Bryce Suzuki<br>Kyle Hirsch<br>bryce.suzuki@bryancave.com<br>kyle.hirsch@bryancave.com | Lawrence Hirsch<br>lhirsch@psazlaw.com | Brian Huben, Dustin Branch and<br>Jessica Mickelsen<br>brian.huben@kattenlaw.com<br>dustin.branch@kattenlaw.com<br>jessica.mickelsen@kattenlaw.com |
| Carolyn Johnsen<br>CJJohnsen@dickinsonwright.com | Lisa Peters<br>lisa.peters@kutakrock.com | Joseph Kruchek<br>joseph.kruchek@kutakrock.com |
| Philip Rudd<br>prudd@polsinelli.com | David Weissman<br>dweissman@roselawgroup.com | Lori Lewis<br>LewisL01@mcao.maricopa.gov |
| Dean C. Waldt<br>Grant L. Cartwright<br>waldtd@ballardspahr.com<br>cartwrightg@ballardspahr.com | Robert Harris, Walter Ashbrook<br>and Lori Winkleman<br>robert.harris@quarles.com<br>walter.ashbrook@quarles.com<br>lori.winkelman@quarles.com | Patrick Howell<br>phowell@whdlaw.com |
| Lamar Advertising Company<br>Attn: Robert S. Bewick<br>bbewick@lamar.com | GE Healthcare<br>Gaurav Malik<br>Gaurav.Malik@ge.com | Insight Direct USA, Inc.<br>Attn: Michael Walker<br>michael.walker@insight.com |
| Ivan Esteban<br>ivanestebanc@gmail.com | Anderson & Associates, Inc.<br>Attn: Roger Simpson<br>ras@andersonexecsearch.com | Nat Palaniappan<br>natpalaniappan@yahoo.com |

| | | |
|---|---|---|
| Sean O'Brien<br>spobrien@gustlaw.com | Bruce Borrus<br>bborrus@riddellwilliams.com | William Fife<br>Daniel Greenberg<br>Daren Brinkman<br>Laura Portillo<br>Kevin Ronk<br>AZ@brinkmanlaw.com<br>daren@brinkmanlaw.com<br>william@williamfifelaw.com |
| Wesley Loy<br>wsl@bowwlaw.com | Michael W. Carmel<br>michael@mcarmellaw.com | Joseph Corrigan<br>Bankruptcy2@ironmountain.com |
| Donald W. Powell<br>dpowell@cplawfirm.com | Mark Svejda<br>mark@azrealestatelawyers.com | Cynthia Switzer<br>Switzer.Cynthia@principal.com |
| Joseph Shickich, Jr.<br>jshickich@riddellwilliams.com | Michael Bach<br>michaelb@dehaan-bach.com | Michael Jones<br>mjones@ambazlaw.com |
| Rafael Zahralddin-Aravena<br>Shelley Kinsella<br>rxza@elliottgreenleaf.com<br>sak@elliottgreenleaf.com | Thomas Salerno<br>Loren Morris<br>tsalerno@gordonsilver.com<br>lmorris@gordonsilver.com | Kurt Zitzer<br>kzitzer@meagher.com |
| Warren Stapleton<br>wstapleton@omlaw.com | Rob Justman<br>rjustman@meagher.com | Gerald Shelley<br>Nancy March<br>gshelley@fclaw.com<br>nmarch@fclaw.com |
| Office of the US Trustee<br>USTPRegion14.PX.ECF@USDOJ.GOV | | |

...and **COPIES** served the same day
via U.S. Mail as follows:

Geoffrey M. Khotim
Nussbaum Gillis & Dinner, P.C.
14850 N. Scottsdale Road, Ste. 450
Scottsdale, AZ 85254
*Attorneys for Steve and Bonnie McCalley*

By: */s/ Kara Gibson Schrader*

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT   District of Arizona | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br><br>GILBERT HOSPITAL, LLC | Case Number:<br><br>2:14-bk-01451-MCW | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Steve McCalley and Bonnie McCalley

**COURT USE ONLY**

Name and address where notices should be sent:
Steve and Bonnie McCalley
c/o Nussbaum Gillis & Dinner, P.C.
14850 N. Scottsdale Road, Suite 450
Scottsdale, AZ 85254
Telephone number:           email:
    (480) 609-0011        gkhotim@ngdlaw.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
    (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):




Telephone number:           email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:        $ 31,122.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Investment in Related Entity - Peoria Regional Medical Center, LLC
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>__ __ __ __ | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

Nature of property or right of setoff: ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

Basis for perfection: _____

Value of Property: $_____

Amount of Secured Claim:    $_____

Annual Interest Rate_____% ☐Fixed  or ☐Variable
(when case was filed)

Amount Unsecured:    $ 31,122.00

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

Amount entitled to priority:

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                     or their authorized agent.                 (See Bankruptcy Rule 3005.)
                                                                     (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Geoffrey M. Khotim, Esq.
Title:
Company: Nussbaum Gillis & Dinner, P.C.
Address and telephone number (if different from notice address above):       (Signature)                    (Date)

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided in this claim is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

### Debtor
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

### Creditor
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

### Claim
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

### Proof of Claim
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

### Secured Claim Under 11 U.S.C. §506(a)
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

### Unsecured Claim
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

### Claim Entitled to Priority Under 11 U.S.C. §507(a)
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

### Redacted
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

### Evidence of Perfection
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

### Acknowledgment of Filing of Claim
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

### Offers to Purchase a Claim
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

651112

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0099

Schedule K-1
(Form 1065)

Department of the Treasury
Internal Revenue Service

**2012**

For calendar year 2012, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,
Credits, etc.**     ▶ See separate Instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | |
|---|---|
| 1 Ordinary business income (loss)  0. | 15 Credits |
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4 Guaranteed payments | |
| 5 Interest income  340. | |
| 6a Ordinary dividends | 17 Alternative min tax (AMT) items |
| 6b Qualified dividends | |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions |
| 9c Unrecaptured sec 1250 gain | |
| 10 Net section 1231 gain (loss) | 20 Other information  A  340. |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss) | |

**Part I    Information About the Partnership**

A Partnership's employer identification number

B Partnership's name, address, city, state, and ZIP code

PEORIA REGIONAL MEDICAL CENTER, LLC
5656 S POWER ROAD
GILBERT, AZ   85295

C IRS Center where partnership filed return
E-FILE

D ☐ Check if this is a publicly traded partnership (PTP)

**Part II    Information About the Partner**

E Partner's identifying number

F Partner's name, address, city, state, and ZIP code
ENTRUST AZ FBO: STEVEN CRAIG MCCALLEY
IRA # 12295
20860 N TATUM BLVD STE 240
PHOENIX, AZ 85050

G ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

H ☒ Domestic partner    ☐ Foreign partner

I1 What type of entity is this partner?  NOMINEE - IRA

I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ......... ☒

J Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 0.4624118% | 0.5403727% |
| Loss | 0.4624118% | 0.5403727% |
| Capital | 0.5169096% | 0.6163046% |

K Partner's share of liabilities at year end:
Nonrecourse .................. $ _____
Qualified nonrecourse financing ........ $ _____
Recourse .................. $ 0.

L Partner's capital account analysis:
Beginning capital account ......... $ 25,480.
Capital contributed during the year .... $ 114.
Current year increase (decrease) ...... $ 340.
Withdrawals & distributions ......... $( _____ )
Ending capital account ........... $ 25,934.

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

M Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

211261
01-03-13  LHA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.     IRS.gov/form1065     Schedule K-1 (Form 1065) 2012

651112

| Schedule K-1 (Form 1065) | **2012** | |
|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2012, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0099

## Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 Ordinary business income (loss) | 0. | 15 Credits | |
| 2 Net rental real estate income (loss) | | | |
| 3 Other net rental income (loss) | | 16 Foreign transactions | |
| 4 Guaranteed payments | | | |
| 5 Interest income | 68. | | |
| 6a Ordinary dividends | | | |
| 6b Qualified dividends | | 17 Alternative min tax (AMT) items | |
| 7 Royalties | | | |
| 8 Net short-term capital gain (loss) | | 18 Tax-exempt income and nondeductible expenses | |
| 9a Net long-term capital gain (loss) | | | |
| 9b Collectibles (28%) gain (loss) | | 19 Distributions | |
| 9c Unrecaptured sec 1250 gain | | 20 Other information | |
| 10 Net section 1231 gain (loss) | | A | 68. |
| 11 Other income (loss) | | | |
| 12 Section 179 deduction | | | |
| 13 Other deductions | | | |
| 14 Self-employment earnings (loss) | | | |

*See attached statement for additional information.

## Part I — Information About the Partnership

A Partnership's employer identification number

B Partnership's name, address, city, state, and ZIP code

PEORIA REGIONAL MEDICAL CENTER, LLC
5656 S POWER ROAD
GILBERT, AZ 85295

C IRS Center where partnership filed return

E-FILE

D ☐ Check if this is a publicly traded partnership (PTP)

## Part II — Information About the Partner

E Partner's identifying number

F Partner's name, address, city, state, and ZIP code

ENTRUST AZ FBO: BONNIE GAY MCCALLEY
IRA # 12303
20860 N TATUM BLVD STE 240
PHOENIX, AZ 85050

G ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

H ☒ Domestic partner    ☐ Foreign partner

I1 What type of entity is this partner? NOMINEE – IRA
I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☒

J Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 0.0924824% | 0.1080746% |
| Loss | 0.0924824% | 0.1080746% |
| Capital | 0.1033819% | 0.1232609% |

K Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 0. |

L Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 5,096. |
| Capital contributed during the year | $ | 24. |
| Current year increase (decrease) | $ | 68. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 5,188. |

For IRS Use Only

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

M Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes", attach statement (see instructions)

211261
01-03-13   LHA   For Paperwork Reduction Act Notice, see Instructions for Form 1065.    IRS.gov/form1065    Schedule K-1 (Form 1065) 2012

OPERATING AGREEMENT
FOR
PEORIA REGIONAL MEDICAL CENTER, LLC

June 20, 2008

THE SECURITIES REPRESENTED BY THIS AGREEMENT HAVE NOT BEEN
REGISTERED UNDER THE SECURITIES ACT OF 1933 NOR REGISTERED
OR QUALIFIED UNDER ANY STATE SECURITIES LAWS. SUCH
SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED
AFTER SALE, TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS
QUALIFIED AND REGISTERED UNDER APPLICABLE STATE AND
FEDERAL SECURITIES LAWS OR UNLESS, IN THE OPINION OF COUNSEL
SATISFACTORY TO THE COMPANY, SUCH QUALIFICATION AND
REGISTRATION ARE NOT REQUIRED. ANY SALE OR TRANSFER OF THE
SECURITIES REPRESENTED BY THIS AGREEMENT IS FURTHER SUBJECT
TO OTHER RESTRICTIONS, TERMS AND CONDITIONS WHICH ARE SET
FORTH HEREIN.

peoria-operagt

# TABLE OF CONTENTS

Page

ARTICLE I    DEFINITIONS ................................................................................ 1
   1.1    "Act" ..................................................................................... 1
   1.2    "Affiliate" .............................................................................. 1
   1.3    "Articles of Dissolution" ...................................................... 1
   1.4    "Articles of Organization" .................................................... 1
   1.5    "Bankruptcy" ....................................................................... 1
   1.6    "Board of Managers" ........................................................... 2
   1.7    "Capital Account" ................................................................ 2
   1.8    "Capital Contribution" ......................................................... 2
   1.9    "Code" .................................................................................. 2
   1.10   "Commission" ....................................................................... 2
   1.11   "Company Minimum Gain" .................................................. 2
   1.12   "Dissolution Event" ............................................................. 2
   1.13   "Distributable Cash" ............................................................ 3
   1.14   "Economic Interest" ............................................................. 3
   1.15   "Economic Interest Owner" ................................................. 3
   1.16   "Event of Dissociation" ....................................................... 3
   1.17   "Fiscal Year" ........................................................................ 3
   1.18   "Fixed Value" ....................................................................... 3
   1.19   "Managers" ........................................................................... 3
   1.20   "Majority Interest" ............................................................... 3
   1.21   "Member" .............................................................................. 4
   1.22   "Member Nonrecourse Debt" ............................................... 4
   1.23   "Member Nonrecourse Deductions" ................................... 4
   1.24   "Membership Interest" ......................................................... 4
   1.25   "Net Profits" and "Net Losses" ............................................ 4
   1.26   "Nonrecourse Liability" ....................................................... 4
   1.27   "Percentage Interest" ........................................................... 4
   1.28   "Regulations" ....................................................................... 4
   1.29   "Tax Matters Partner" .......................................................... 4

ARTICLE II    ORGANIZATIONAL MATTERS ...................................................... 4
   2.1    Formation ............................................................................. 4
   2.2    Name .................................................................................... 5
   2.3    Term ..................................................................................... 5
   2.4    Office and Agent .................................................................. 5
   2.5    Addresses of the Members ................................................... 5
   2.6    Purpose of Company ............................................................ 5
   2.7    Property ................................................................................ 5

-i-

# TABLE OF CONTENTS
## (continued)

Page

ARTICLE III    CAPITAL CONTRIBUTIONS ............................................................... 6

    3.1    Initial Capital Contributions ...................................................... 6
    3.2    Additional Capital Contributions ............................................... 6
    3.3    Capital Accounts ....................................................................... 6
    3.4    No Interest................................................................................. 6
    3.5    Failure to Make Contributions .................................................. 6
    3.6    Return of Capital...................................................................... 8

ARTICLE IV    MEMBERS .......................................................................................... 8

    4.1    Limited Liability ........................................................................ 8
    4.2    Admission of Additional Members.............................................. 8
    4.3    Withdrawals or Resignations ..................................................... 8
    4.4    Transactions With the Company................................................. 8
    4.5    Remuneration to Members......................................................... 9
    4.6    Members Are Not Agents ........................................................... 9
    4.7    Non-Competition of Members .................................................... 9

    4.8    Voting Rights ............................................................................. 9

    4.9    Meetings of Members ................................................................. 9

        A.    Date, Time and Place of Meetings of Members; Secretary ........... 9
        B.    Power to Call Meetings............................................................. 9
        C.    Notice of Meetings................................................................... 9
        D.    Manner of Giving Notice; Affidavit of Notice ............................ 10
        E.    Validity of Action .................................................................... 10
        F.    Quorum ................................................................................... 10
        G.    Voting ..................................................................................... 11
        H.    Adjourned Meeting; Notice ...................................................... 11
        I.    Waiver of Notice or Consent .................................................... 11
        J.    Action by Written Consent without a Meeting............................ 11
        K.    Telephonic Participation by Member at Meetings....................... 12
        L.    Record Date ............................................................................ 12
        M.    Proxies.................................................................................... 12

    4.10    Certificate of Membership Interest ........................................... 13

        A.    Certificate............................................................................... 13
        B.    Cancellation of Certificate ....................................................... 13
        C.    Replacement of Lost, Stolen or Destroyed Certificate ................ 13

    4.11    Subscription Agreement............................................................. 13

-ii-

ARTICLE V     MANAGEMENT AND CONTROL OF THE COMPANY ........... 14

5.1    Management of the Company by the Managers ...................................... 14

      A.    Exclusive Management by the Managers ................................... 14
      B.    Agency Authority of the Managers........................................... 14
      C.    Meetings of Managers.............................................................. 14

5.2    Election of Managers ................................................................... 15

      A.    Number, Term and Qualifications ........................................... 15
      B.    Resignation .............................................................................. 15
      C.    Vacancies ................................................................................. 15

5.3    Powers of Managers..................................................................... 15

      A.    Powers of Managers.................................................................. 15
      B.    Limitations on Powers of Managers ........................................ 15

5.4    Members Have No Managerial Authority ...................................... 16
5.5    Performance of Duties; Liability of Managers .............................. 16
5.6    Devotion of Time.......................................................................... 16
5.7    Competing Activities .................................................................... 16
5.8    Transactions between the Company and the Managers.................... 17
5.9    Payments to the Managers ............................................................ 17

      A.    Management Fees ..................................................................... 17
      B.    Services Performed by the Managers or Affiliates..................... 17
      C.    Expenses ................................................................................. 17

5.10   Acts of Managers as Conclusive Evidence of Authority ......................... 18
5.11   Quorum ......................................................................................... 18
5.12   Voting ........................................................................................... 18
5.13   Officers ......................................................................................... 18

      A.    Appointment of Officers ........................................................... 18
      B.    Removal Resignation and Filling of Vacancy of Officers........... 18
      C.    Salaries of Officers .................................................................. 19
      D.    Duties and Powers of the President ......................................... 19

5.14   Limited Liability............................................................................ 19

ARTICLE VI    ALLOCATIONS OF NET PROFITS AND NET LOSSES
                  AND DISTRIBUTIONS ................................................. 19

6.1    Allocations of Net Profit and Net Loss........................................... 19

      A.    Net Loss .................................................................................. 19
      B.    Net Profit................................................................................. 19

6.2    Special Allocations ...................................................................... 19

-iii-

A.  Minimum Gain Chargeback ................................................ 20
B.  Chargeback of the Minimum Gain Attributable to Member
    Nonrecourse Debt ............................................................. 20
C.  Nonrecourse Deductions .................................................... 20
D.  Member Nonrecourse Deductions ..................................... 20
E.  Qualified Income Offset .................................................... 20

6.3   Code Section 704(c) Allocations ........................................... 21
6.4   Allocation of Net Profits and Losses and Distributions for
      Transferred Interest .............................................................. 21
6.5   Distribution of Assets by the Company ............................... 21
6.6   Form of Distribution .............................................................. 22
6.7   Return of Distributions .......................................................... 22
6.8   Obligations of Members to Report Allocations .................... 22

ARTICLE VII   TRANSFER AND ASSIGNMENT OF INTERESTS ..................... 22

7.1   Transfer and Assignment of Interests .................................. 22
7.2   Further Restrictions on Voluntary Transfer of Interests ..... 22
7.3   Substitution of Members ....................................................... 23
7.4   Family and Affiliate Transfers .............................................. 23
7.5   Effective Date of Permitted Transfers ................................. 23
7.6   Transfers in Violation of Agreement ................................... 23
7.7   Right of First Refusal ............................................................ 23
7.8   Payment of Purchase Price .................................................... 25
7.9   Closing of Purchase of Transferring Member's Interest ...... 25
7.10  Purchase Terms Varied by Agreement ................................. 26

ARTICLE VIII   CONSEQUENCES OF DISSOLUTION EVENT ...................... 26

8.1   Dissolution Event ................................................................... 26
8.2   Withdrawal ............................................................................. 26
8.3   Right of First Refusal ............................................................ 26
8.4   Purchase Price ........................................................................ 27
8.5   Payment of Purchase Price .................................................... 27
8.6   Closing of Purchase of Former Membership Interest ......... 27
8.7   Purchase Terms Varied by Agreement ................................. 28
8.8   Rights of Legal Representatives ............................................ 28

ARTICLE IX   ACCOUNTING, RECORDS, REPORTING BY MEMBERS ......... 28

9.1   Books and Records ................................................................. 28
9.2   Annual Statements ................................................................. 29
9.3   Filings .................................................................................... 29
9.4   Bank Accounts ....................................................................... 30

-iv-

9.5     Accounting Decisions and Reliance on Others ........................................ 30

9.6     Tax Matters for the Company Handled by the Managers and Tax
Matters Partner ........................................................................................ 30

9.7     Non-Disclosure of Proprietary Information .......................................... 30

ARTICLE X        DISSOLUTION AND WINDING UP ........................................... 31

10.1    Dissolution ............................................................................................... 31
10.2    Articles of Dissolution ............................................................................ 31
10.3    Winding Up .............................................................................................. 31
10.4    Distributions in Kind ............................................................................... 32
10.5    Order of Payment of Liabilities Upon Dissolution ............................... 32
10.6    Compliance with Regulations ................................................................. 33
10.7    Limitations on Payments Made in Dissolution ...................................... 33
10.8    No Action for Dissolution ....................................................................... 33

ARTICLE XI       INDEMNIFICATION AND INSURANCE .................................... 33

11.1    Indemnification of Agents ....................................................................... 33
11.2    Insurance .................................................................................................. 34

ARTICLE XII      MISCELLANEOUS ...................................................................... 34

12.1    Counsel to the Company .......................................................................... 34
12.2    Complete Agreement ............................................................................... 34
12.3    Binding Effect .......................................................................................... 34
12.4    Parties in Interest ..................................................................................... 34
12.5    Pronouns; Statutory References .............................................................. 34
12.6    Headings ................................................................................................... 35
12.7    Interpretation ........................................................................................... 35
12.8    References to this Agreement .................................................................. 35
12.9    Jurisdiction .............................................................................................. 35
12.10   Disputed Matters ..................................................................................... 35
12.11   Exhibits .................................................................................................... 35
12.12   Severability ............................................................................................. 35
12.13   Additional Documents and Acts ............................................................. 35
12.14   Notices ..................................................................................................... 35
12.15   Amendments ............................................................................................ 36
12.16   Reliance on Authority of Person Signing Agreement ............................ 36
12.17   No Interest in Company Property; Waiver of Action for Partition .......... 36
12.18   Multiple Counterparts ............................................................................. 36
12.19   Attorney's Fees ........................................................................................ 36
12.20   Time is of the Essence ............................................................................ 36
12.21   Remedies Cumulative .............................................................................. 36
12.22   Special Power of Attorney ...................................................................... 36

-v-

# TABLE OF CONTENTS
## (continued)

| | | | |
|---|---|---|---|
| | A. | Attorney in Fact | 36 |
| | B. | Irrevocable Power | 37 |
| | C. | Signatures | 37 |
| 12.23 | Noncompetition | | 37 |
| | A. | Prohibited Activities | 37 |
| | B. | Intent; Severability | 38 |
| | C. | Injunctive Relief | 38 |

CONSENT OF SPOUSE .......................................................... 41

EXHIBIT A: CAPITAL CONTRIBUTION OF MEMBERS AND ADDRESSES
OF MEMBERS AS OF _____, 2008 .................. 42

Case 2:14-bk-01451-MCW   Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document    Page 26 of 73

# OPERATING AGREEMENT
## FOR
## PEORIA REGIONAL MEDICAL CENTER, LLC

This Operating Agreement ("Agreement") is made on June 20, 2008 by and among the Members listed on the signature pages hereof with reference to the following facts:

A.     On November 5, 2007, Articles of Organization for Peoria Hospital LLC ("Company"), a limited liability company under the laws of the State of Arizona, were filed with the Commission.

B.     On April 25, 2008, an amendment to the Articles of Organization of Peoria Hospital LLC was filed changing its name to Peoria Regional Medical Center, LLC.

C.     The parties desire to adopt and approve this Agreement to govern the affairs and conduct of the Company, and the relations of the Members and Managers.

NOW, THEREFORE, the parties agree to the following.

## ARTICLE I

## DEFINITIONS

When used in this Agreement, the following terms shall have the meanings set forth below:

1.1     "Act" shall mean the Arizona Limited Liability Company Act, Chapter 4 of Title 29, Arizona Revised Statutes, as amended from time to time.

1.2     "Affiliate" shall mean any individual, partnership, corporation, limited liability company, trust or other entity which is, directly or indirectly, controlling, controlled by or under common control with a Member or Manager. The term "control" as used in the immediately preceding sentence means for a corporation or limited liability company, the right to exercise, directly or indirectly, more that fifty percent (50%) of the voting rights of the controlled corporation or limited liability company and, for any individual, partnership, trust or other entity, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

1.3     "Articles of Dissolution" shall mean the Articles of Dissolution for the Company, if any, filed with the Commission.

1.4     "Articles of Organization" shall mean the Articles of Organization for the Company as filed with the Commission.

florence-operagi

1.5 "Bankruptcy" means the occurrence of any of the following events: (i) the filing by an entity of a voluntary case or the seeking of relief under any chapter of Title 11 of the United State Code, as now constituted or hereafter amended (the "Bankruptcy Code"), (ii) the making by an entity of a general assignment for the benefit of its creditors, (iii) the admission in writing by an entity of its inability to pay its debts as they mature, (iv) the filing by an entity of an application for, or consent to, the appointment of any receiver or a permanent or interim trustee of such an entity or of all or any portion of its property, including without limitation the appointment or authorization of a trustee, receiver or agent under applicable law or under a contract to take charge of its property for the purposes of enforcing a lien against such property or for the purpose of general administration of such property for the benefit of its creditors, (v) the filing by an entity of a petition seeking a reorganization of its financial affairs or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against it in any proceeding under any such law or statute, (vi) the commencement of an involuntary case against an entity by the filing of a petition under any chapter of the Bankruptcy Code in which, within sixty (60) days after the filing thereof, the petition is not dismissed and the order for relief is not stayed or dismissed, (vii) the entry of an order, judgment or decree appointing a receiver or a permanent or interim trustee of an entity or of all or any portion of its property, including without limitation the entry of an order, judgment or decree appointing or authorizing a trustee, receiver or agent to take charge of the property of such an entity for the purpose of enforcing a lien against such property or for the purpose of general administration of such property for the benefit of the creditors of such an entity, which order, judgment or decree continues unstayed and in effect for a period of sixty (60) days, or (viii) the entry of an order, judgment or decree, without the approval or consent of an entity, approving or authorizing the reorganization, insolvency, readjustment of debt, dissolution or liquidation of such an entity under any such law or statute, which order, judgment or decree continues unstayed and in effect for a period of sixty (60) days.

1.6 "Board of Managers" shall mean the Manager or Managers who manage the Company pursuant to Article V.

1.7 "Capital Account" shall mean the account which the Company establishes and maintains for a Member pursuant to Section 3.3.

1.8 "Capital Contribution" shall mean the total value of cash and fair market value of property (including promissory notes and other obligations) contributed and/or services provided to the Company by a Member.

1.9 "Code" shall mean the Internal Revenue Code of 1986 as amended from time to time and, to the extent applicable, the Regulations.

1.10 "Commission" shall mean the Arizona Corporation Commission.

1.11 "Company Minimum Gain" shall have the meaning ascribed to the term "Partnership Minimum Gain" in the Regulations Section 1.704-2(d).

1.12 "Dissolution Event" shall include, but not be limited to the following Events of Dissociation. For any individual Member, his or her death, insanity or incompetence (as adjudged by a court of competent jurisdiction). It shall also mean with respect to a Member: a Bankruptcy; dissolution and winding up or termination of a Member which is a partnership, limited partnership or limited liability company; the filing of a certificate of dissolution or liquidation of a Member which is a corporation; the distribution by the fiduciary of an estate's entire interest of a Member which is an estate; the termination of a trust of a Member which is a trust or acting as a Member by virtue of being a trustee of a trust; involuntary withdrawal, resignation, expulsion or termination of a Member from the Company; conviction of a felony or a misdemeanor involving moral turpitude; breach of this Agreement, including the non-competition provisions of Section 12.23; loss of license to practice medicine or dentistry; loss, suspension or conditioning of medical staff privileges; failure to comply with the credentialing criteria of Company; exclusion from the Medicare or AHCCCS program or any other federal or state health insurance program; embezzlement or conversion of Company property; or any other event which terminates the membership of a Member under this Agreement, the Articles of Organization or the Act.

1.13 "Distributable Cash" shall mean the amount of cash which the Managers deem available for distribution to the Members, taking into account all debts, liabilities and obligations of the Company then due and amounts which the Managers deem necessary to place into reserves for the Company's business.

1.14 "Economic Interest" shall mean a Member's or Economic Interest Owner's share of the Company's Net Profits, Net Losses and distributions of the Company's assets pursuant to this Agreement and the Act, but shall not include any other rights of a Member including, without limitation, the right to vote.

1.15 "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

1.16 "Event of Dissociation" shall mean an event that causes a person to cease to be a Member.

1.17 "Fiscal Year" shall mean the Company's fiscal year, which shall be the calendar year.

1.18 "Fixed Value" shall mean the value for a Membership Interest set by the Managers at least annually. The value shall be dated and recorded in the minute book of the Company. The agreed upon value shall be effective for twelve (12) months or until a new value has been established. Any value for a Membership Interest established by the Managers shall be final, and shall not be subject to dispute by a Member. In addition, neither the method of determining the Fixed Value nor the specific Fixed Value established by the Managers shall be subject to arbitration under Section 12.10 of this Agreement or any other legal or administrative proceedings, except as required by law.

1.19 "Manager" or "Managers" shall mean the person or persons named in the Articles of Organization or this Agreement.

1.20 "Majority Interest" shall mean those Percentage Interests which exceed fifty percent (50%) of the aggregate of all Percentage Interests.

1.21 "Member" shall mean a person who (a) is an initial signatory to this Agreement and is admitted to the Company as a Member in accordance with this Agreement; an assignee who has become a Member in accordance with Article VII; or a person who is admitted to the Company as a Member pursuant to this Agreement and (b) has not resigned, withdrawn, been expelled or transferred all of his or her Membership Interests or, if other than an individual, dissolved.

1.22 "Member Nonrecourse Debt" shall have the meaning ascribed to the term "Partner Nonrecourse Debt" in Regulations Section 1.704-2(b)(4).

1.23 "Member Nonrecourse Deductions" has the same meaning as the term "Partner Nonrecourse Deductions" under Regulations Section 1.704-2(i)(1).

1.24 "Membership Interest" shall mean a Member's entire interest in the Company, including the Member's Economic Interest, any right to vote and any right to information concerning the business and affairs of the Company.

1.25 "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with generally accepted accounting principles employed under the method of accounting at the close of each Fiscal Year on the Company's tax return filed for federal income tax purposes.

1.26 "Nonrecourse Liability" shall have the meaning set forth in Regulations Section 1.704-2(b)(3).

1.27 "Percentage Interest" shall mean the percentage of a Member set forth opposite the name of the Member under the column "Member's Percentage Interest" in Exhibit A hereto, as such percentage may be adjusted from time to time pursuant to the terms of this Agreement. Percentage Interests shall be determined annually unless otherwise provided herein in accordance with the relative proportions of the Capital Accounts of the Members, effective as of the first day of the Company's Fiscal Year, but with all distributions under this Agreement to be deemed to have occurred on such day immediately prior to determination of the Percentage Interest of a Member.

1.28 "Regulations" shall mean the current regulations which have been issued by the U.S. Department of Treasury pursuant to its authority under the Code.

1.29 "Tax Matters Partner" shall mean Timothy Johns, M.D. or his successor as designated pursuant to Section 9.8.

4

## ARTICLE II

## ORGANIZATIONAL MATTERS

2.1     Formation. Pursuant to the Act, the Members have formed a limited liability company under the laws of the State of Arizona by filing Articles of Organization with the Commission. The rights and liabilities of the Members shall be determined pursuant to the Act and this Agreement. To the extent that the rights or obligations of any Member are different by reason of any provision of this Agreement than they would be in the absence of such provision, this Agreement shall control to the extent permitted by the Act.

2.2     Name. The name of the Company shall be "Peoria Regional Medical Center, LLC." The business of the Company may be conducted under that name or any other name that the Managers deem appropriate or advisable upon compliance with applicable laws. The Managers shall file any fictitious name certificates and similar filings, and any amendments thereto, that the Managers consider appropriate or advisable, or are required by law.

2.3     Term. The term of this Agreement shall commence with the filing of Articles of Organization and shall continue in perpetuity, unless sooner terminated as hereinafter provided or in accordance with the Act.

2.4     Office and Agent. The Company shall continuously maintain an office and registered agent in the State of Arizona as required by the Act. The principal office of the Company shall be located where the Managers determine. The Company also may have such offices within or without the State of Arizona as the Managers from time to time may determine or the business of the Company may require. The Company shall maintain at its principal office that information required to be maintained at the office by the Act. The registered agent shall be as stated in the Articles of Organization, and shall be the Company's agent for service of process, notice and demand required or permitted by law to be served on the Company.

2.5     Addresses of the Members. The respective addresses of the Members are set forth on Exhibit A.

2.6     Purpose of Company. The purpose of the Company is to engage in any lawful activity for which a limited liability company may be organized under the Act. Notwithstanding the foregoing, the Company shall not engage in any business other than the following without the consent of the Managers:

(a)     an acute care hospital; and

(b)     any other business directly related to the foregoing business as may be necessary, advisable or appropriate in the opinion of the Managers.

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 31 of 73

2.7    Property.    Property transferred to or otherwise acquired by the Company is the property of the Company.  Property acquired or owned by the Company shall be acquired, held and conveyed in the name of the Company.

# ARTICLE III

## CAPITAL CONTRIBUTIONS

3.1    Initial Capital Contributions.  Each Member shall contribute the amount set forth on Exhibit A as his or her initial Capital Contribution.  Exhibit A shall be revised to reflect any additional contributions of Members.

3.2    Additional Capital Contributions.  The Members shall contribute additional capital to the Company in such amounts and at such times as the Managers shall determine; provided, however, that the Managers shall first seek such additional capital from other sources such as banks and other lenders as well as voluntary loans from the Members.  The Members shall contribute such additional capital in proportion to their respective Percentage Interests.  Upon a determination that additional capital is required from the Members, the Managers shall give written notice to each Member.  Each Member shall have thirty (30) days from the date such notice is given to contribute his or her share of the additional capital to the Company.  Each Member shall receive a credit to his or her Capital Account in the amount of any additional capital which he or she contributes to the Company.

3.3    Capital Accounts.  The Company shall establish an individual Capital Account for each Member.  If a Member transfers all or a part of his or her Membership Interest in accordance with this Agreement, such Member's Capital Account attributable to the transferred Membership Interest shall carry over to the new owner of such Membership Interest.

3.4    No Interest.  No Member shall be entitled to receive any interest on his or her Capital Contributions, except voluntary loans to the Company which will bear interest at 8.5% per annum.

3.5    Failure to Make Contributions.  If a Member does not timely contribute capital when required, that Member shall be in default under this Agreement.  In such event, the Managers shall send the defaulting Member written notice of such default, giving him or her fourteen (14) days from the date such notice is given to contribute the entire amount of his or her required capital.  If the defaulting Member does not contribute his or her required capital to the Company within the fourteen (14) day period, the Managers may elect any one or more of the following remedies:

A.    The non-defaulting Members may advance funds to the Company to cover those amounts which the defaulting Member fails to contribute. Amounts which a non-defaulting Member so advances on behalf of the defaulting Member shall become a loan due and owing from the defaulting Member to such non-defaulting Member and bear interest at the rate of 8.5% per annum.  Cash distributions

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 32 of 73

otherwise distributable to the defaulting Member under this Agreement shall instead be paid to the non-defaulting Members making such advances until such advances and interest thereon are paid in full. Any such advances shall be evidenced by a promissory note and be due and payable by the defaulting Member one (1) year from the date that such advance was made. Any amounts repaid shall first be applied to interest and thereafter to principal. Effective upon a Member becoming a defaulting Member, each Member grants to the non-defaulting Members who advance funds under this Section 3.5A a security interest in his or her Economic Interest to secure his or her obligation to repay such advances and agrees to execute and deliver a promissory note, security agreement, UCC-1 financing statement and assignment of certificates of membership (or other documents of transfer) as such non-defaulting Members may reasonably request.

        B.    The Percentage Interests shall be adjusted, in which event each non-defaulting Member's Percentage Interest shall be a fraction, the numerator of which represents the amount of such Member's Capital Account and the denominator of which represents the sum of all Member's Capital Accounts.

        C.    The Company or the non-defaulting Members may purchase the defaulting Member's entire Membership Interest in accordance with the same terms and conditions as those set forth in Article VIII, except that the purchase price shall be an amount equal to fifty percent (50%) of the purchase price determined in accordance with Section 8.3.

        D.    The defaulting Member shall have no right to receive any distributions from the Company until the non-defaulting Members have first received distributions in an amount equal to the additional capital contributed by each non-defaulting Member to the Company plus a cumulative, non-compounded return thereon at the rate often 8.5% per annum.

        E.    The defaulting Member shall lose his or her ability to vote on Company matters, until such time as the defaulting Member cures the default.

        F.    If the defaulting Member does not make a required contribution of property or services, the Company may require the defaulting Member to contribute cash equal to that portion of the fair market value of the contribution that has not been made. This remedy is in addition to and not in lieu of any other rights, including the right to specific performance, the remedies listed above in this Section 3.5 or any other rights of the Company or its Members under applicable law.

        G.    The defaulting Member shall not be released from his or her liability under this Section 3.5 if he or she transfers, assigns, conveys, sells, encumbers, hypothecates or otherwise disposes of his or her Membership Interest unless the Managers approve such a release.

     Each Member acknowledges and agrees that the remedies described in this Section 3.5 bear a reasonable relationship to the damages which the Members estimate may be suffered by the Company and the non-defaulting Members by reason of the

Case 2:14-bk-01451-MCW   Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document   Page 33 of 73

failure of a defaulting Member to make an additional Capital Contribution and the election of any or all of the above described remedies is not unreasonable under the circumstances existing as of the date hereof.

The election of the Managers to pursue any or all remedies provided in this Section 3.5 shall not be a waiver or limitation of the right to pursue an additional or different remedy available hereunder or by law or equity.

3.6  Return of Capital.  Except upon dissolution and liquidation of the Company as set forth in Article X, there is no agreement for, or time set for, the return of any Capital Contribution of any Member.  To the extent funds are available therefore, the Managers may return such capital out of operating revenues or out of proceeds of the sale or refinancing of Company property, after reserving sufficient funds, in the reasonable discretion of the Managers, for payment of debts, existing and future acquisitions, working capital, contingencies, replacements and withdrawals of capital, if any, and to the extent of available funds, the Managers shall return such capital at dissolution and termination, as hereinafter set forth.  If any Member shall receive the return, in whole or in part, of his or her Capital Contributions, such Member shall nevertheless be liable to the Company for any sum wrongfully returned to him or her or for any sum, not in excess of such return with interest, necessary to discharge Company liabilities to all creditors who extended credit or whose claims arose before such return, all as and to the extent required by applicable laws.

## ARTICLE IV

## MEMBERS

4.1  Limited Liability.  No Member shall be personally liable for any debt, obligation or liability of the Company, whether that liability or obligation arises in contract, tort or otherwise solely by reason of being a Member.

4.2  Admission of Additional Members.  The Managers may admit to the Company additional Members.  Notwithstanding the foregoing, substitute Members may only be admitted in accordance with Article VII.

4.3  Withdrawals or Resignations.  After the first two (2) years of membership, a Member may voluntarily withdraw or resign as a Member at any time upon one hundred twenty (120) days prior written notice to the Company, without prejudice to the rights, if any, of the Company or other Members under any contract to which the withdrawing Member is a party.  Such Member's Membership Interest shall be subject to repurchase and sale as provided in Article VII.  No Member may voluntarily resign or withdraw during the first two (2) years of membership or voluntarily transfer, assign, convey, sell, encumber, hypothecate or otherwise dispose of all or any part of his or her Membership Interest under Article VII during the first two (2) years of membership, except pursuant to Section 7.4.  The Company and the other Members have no obligation to repurchase the Membership Interest of a Member who wants to voluntarily withdraw or resign as a Member.

4.4 _Transactions with the Company_. Subject to any limitations set forth in the Articles of Organization and this Agreement, and with the prior approval of the Managers after full disclosure of the Member's involvement, a Member may lend money to and transact other business with the Company. Subject to any other applicable law, such Member has the same rights and obligations with respect thereto as a person who is not a Member.

4.5 _Remuneration to Members_. Except as otherwise authorized in or pursuant to this Agreement, no Member is entitled to remuneration by the Company, subject to the entitlement of Managers or Members winding up the affairs of the Company to reasonable compensation under Article X.

4.6 _Members Are Not Agents_. Pursuant to Article V and the Articles of Organization, the management of the Company is vested in the Managers. No Member acting solely in the capacity of a Member is an agent of the Company or is permitted to bind or execute any instrument on behalf of the Company.

4.7 _Non-Competition of Members_. No Member shall contribute to, invest in or otherwise have an ownership interest in any entity which provides similar services or which otherwise competes with or carries on a similar business to that of the Company without the written consent of the Managers.

4.8 _Voting Rights_. Members shall have the right to approve or disapprove matters as specifically stated in this Agreement and the Act, including the following:

(i) A decision to sell, exchange or otherwise dispose of all or substantially all of the assets of the Company.

(ii) A decision to merge or consolidate the Company.

(iii) A decision to declare Bankruptcy.

4.9 _Meetings of Members_.

A. _Date, Time and Place of Meetings of Members; Secretary_. Meetings of Members may be held on such date, time and place within or without the State of Arizona as the Managers may fix from time to time. An annual meeting of Members shall be held, but no regular meetings of Members are required. At any Members' meeting, the Managers shall appoint a Member to preside at the meeting and a Member to act as secretary of the meeting. The secretary of the meeting shall prepare minutes of the meeting, which shall be placed in the minute book of the Company.

B. _Power to Call Meetings_. Unless otherwise prescribed by the Act or by the Articles of Organization, meetings of the Members may be called by any Manager for the purpose of addressing any matter on which the Members may vote.

Case 2:14-bk-01451-MCW   Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document    Page 35 of 73

C.  <u>Notice of Meetings</u>.  Written notice of a meeting of Members shall be sent or otherwise given to each Member in accordance with Section 4.9D not less than ten (10) nor more than thirty (30) days before the date of the meeting.  The notice shall specify the place, date and hour of the meeting and the general nature of the business to be transacted.  No other business may be transacted at such meeting.  Upon written request to a Manager by any person entitled to call a meeting of Members, the Managers shall immediately cause notice to be given to the Members entitled to vote that a meeting will be held at a time requested by the person calling the meeting, not less than ten (10) days nor more than thirty (30) days after the receipt of the request.  If the notice is not given within twenty (20) days after the receipt of the request, the person entitled to call the meeting may give the notice.

D.  <u>Manner of Giving Notice; Affidavit of Notice</u>.  Notice of any meeting of Members shall be given either personally or by first-class mail, charges prepaid, addressed to the Member at the address of that Member appearing on the books of the Company or given by the Member to the Company for the purpose of notice.  If no such address appears on the Company's books or is given, notice shall be deemed to have been given if sent to that Member by first-class mail to the Company's principal executive office, or if published at least once in a newspaper of general circulation in the county where that office is located.  Notice shall be deemed to have been given at the time when delivered personally or deposited in the mail.

If any notice addressed to a Member at the address of that Member appearing on the books of the Company is returned to the Company by the United States Postal Service marked to indicate that the United States Postal Service is unable to deliver the notice to the Member at that address, all future notices or reports shall be deemed to have been duly given without further mailing if they are available to the Member on written demand of the Member at the principal executive office of the Company for a period of one (1) year from the date of the giving of the notice.

An affidavit of the mailing or other means of giving any notice of any meeting shall be executed by a Manager, the secretary of the Company or any transfer agent of the Company giving the notice, and shall be filed and maintained in the minute book of the Company.

E.  <u>Validity of Action</u>.  Any action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice.

F.  <u>Quorum</u>.  The presence in person or by proxy of the holders of a Majority Interest shall constitute a quorum at a meeting of Members.  The Members present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the loss of a quorum, if any action taken after loss of a quorum (other than adjournment) is approved by at least Members holding a Majority Interest or a greater Percentage Interest if required by this Agreement or the Act.

Case 2:14-bk-01451-MCW   Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document   Page 36 of 73

G.    Voting.   Unless otherwise required by this Agreement or the Act, the affirmative vote of Members entitled to vote holding a Majority Interest is required to approve any act of the Members.

H.    Adjourned Meeting; Notice.   Any Members' meeting, whether or not a quorum is present, may be adjourned from time to time by the vote of the majority of the Membership Interests represented at that meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at that meeting, except as provided in Section 4.9F.  When any meeting of Members is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place are announced at the meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is subsequently fixed or unless the adjournment is for more than forty-five (45) days from the date set for the original meeting, in which case the Managers shall set a new record date.  At any adjourned meeting, the Company may transact any business which might have been transacted at the original meeting.

I.    Waiver of Notice or Consent.  The actions taken at any meeting of Members however called and noticed, and whether held, have the same validity as if taken at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy and if, either before or after the meeting, each of the Members entitled to vote, who was not present in person or by proxy, signs a written waiver of notice or consents to the holding of the meeting or approves the minutes of the meeting.  All such waivers, consents or approvals shall be filed with the Company records or made a part of the minutes of the meeting.

Attendance of a Member at a meeting shall constitute a waiver of notice of that meeting, except when the Member objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened, except that attendance at a meeting is not a waiver of any right to object to the consideration of matters not included in the notice of the meeting if that objection is expressly made at the meeting.  Neither the business to be transacted nor the purpose of any meeting of Members need be specified in any written waiver of notice except as provided in Section 4.9E.

J.    Action by Written Consent without a Meeting.   Any action which may be taken at a meeting of Members may be taken without a meeting if a consent in writing setting forth the action so taken is signed and delivered to the Company within sixty (60) days of the record date for that action by Members having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all Members entitled to vote on that action at a meeting were present and voted.  All such consents shall be filed with the Managers, and shall be maintained in the Company records.  Any Member giving a written consent or a Member's proxy may revoke the consent by a writing received by the Managers or secretary of the Company, before written consents of the number of votes required to authorize the proposed action have been filed.

11

Unless the consents of all Members entitled to vote have been solicited in writing, (i) notice of any Member approval required under this Agreement without a meeting by less than unanimous written consent, shall be given at least ten (10) days before the consummation of the action authorized by such approval, and (ii) prompt notice shall be given of the taking of any other action approved by Members without a meeting by less than unanimous written consent to those Members entitled to vote who have not consented in writing.

K.    Telephonic Participation by Member at Meetings.  Members may participate in any Members' meeting through the use of any means of conference telephone or similar communications equipment as long as all Members participating can hear one another.  A Member so participating is deemed to be present in person at the meeting.

L.    Record Date.  In order that the Company may determine the Members of record for notices of any meeting or to vote, or entitled to receive any distribution, exercise any rights for any distribution or exercise any rights for any other lawful action, the Managers may fix, in advance, a record date, that is not more than ten (10) days prior to the date of the meeting and any other action.  If no record date is fixed:

(i)    The record date for determining Members entitled to notice of or to vote at a meeting of Members shall be at the close of business on the business day next preceding the day on which notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held.

(ii)    The record date for determining Members entitled to give consent to Company action in writing without a meeting shall be the day on which the first written consent is given.

(iii)    The record date for determining Members for any other purpose shall be at the close of business on the day on which the Managers adopt the resolution relating thereto or the 10th day prior to the date of the other action, whichever is later.

(iv)    The determination of Members of record entitled to notice of or to vote at a meeting of Members shall apply to any adjournment of the meeting unless a Manager or the Members who called the meeting fix a new record date for the adjourned meeting, but the Manager or the Members who called the meeting shall fix a new record date if the meeting is adjourned for more than ten (10) days from the date set for the original meeting.

M.    Proxies.  Every Member who is entitled to vote shall have the right to do so either in person or by one or more agents authorized by a written proxy signed by the Member and filed with the Managers.  A proxy shall be deemed signed if the Member's name is placed on the proxy (whether by manual signature, typewriting, telegraphic transmission, electronic transmission or otherwise) by the Member or the

Member's attorney in fact. A proxy may be transmitted by an oral telephonic transmission if it is submitted with information from which it may be determined that the proxy was authorized by the Member or the Member's attorney in fact. A validly executed proxy which does not state that it is irrevocable shall continue in full force and effect unless (i) revoked by the Member executing it before the vote pursuant to that proxy by a writing delivered to the Company stating that the proxy is revoked, or by a subsequent proxy executed by or attendance at the meeting and voting in person by the Member executing the proxy; or (ii) written notice of the death or incapacity of the maker of that proxy is received by the Company before the vote pursuant to that proxy is counted; provided, however, that no proxy shall be valid after the expiration of sixty (60) days from the date of the proxy unless otherwise provided in the proxy.

    4.10   Certificate of Membership Interest.

        A.    Certificate. A Membership Interest may be represented by a certificate of membership interest. The exact contents of a certificate of membership interest may be determined by action of the Managers but shall be issued substantially in conformity with the following requirements: the certificates of membership interest shall be numbered serially as they are issued, shall be impressed with the Company seal, if any, and shall be signed by the president of the Company. Each certificate of membership interest shall state the name of the Company, the fact that the Company is organized under the laws of the State of Arizona as a limited liability company, the name of the person to whom issued, the date of issue and the Percentage Interests represented thereby. A statement of the designations, preferences, qualifications, limitations, restrictions and special or relative rights of the Membership Interest, if any, shall be set forth in full or summarized on the face or back of the certificate, or in lieu thereof, the certificate may set forth that such a statement or summary will be furnished to any holder of a Membership Interest upon request without charge. Each certificate of membership interest shall be otherwise in such form as may be determined by the Managers.

        B.    Cancellation of Certificate. All certificates of membership interest surrendered to the Company for transfer shall be cancelled and no new certificates of membership interest shall be issued in lieu thereof until the former certificates for a like number of Membership Interests shall have been surrendered and cancelled, except as herein provided with respect to lost, stolen or destroyed certificates.

        C.    Replacement of Lost, Stolen or Destroyed Certificate. Any Member claiming that his or her certificate of membership interest is lost, stolen or destroyed may make an affidavit or affirmation of that fact and request a new certificate. Upon the giving of a satisfactory indemnity to the Company as reasonably required by the Managers, a new certificate may be issued.

    4.11   Subscription Agreement. Each Member and his or her spouse is required to execute and deliver to the Company the Subscription Agreement of the Company, a copy of which is attached as Exhibit A and is incorporated by reference into this Agreement.

## ARTICLE V

## MANAGEMENT AND CONTROL OF THE COMPANY

5.1 <u>Management of the Company by the Managers</u>.

A. <u>Exclusive Management by the Managers</u>. The business, property and affairs of the Company shall be managed exclusively by the Managers. The Managers must consist of one (1) or more entities which are Members or Affiliates of Members. Except for situations in which the approval of the Members is expressly required by the Act, Articles of Organization or this Agreement, the Managers shall have full, complete and exclusive authority, power and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs. The Managers shall discharge their duties in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances and in a manner they reasonably believe to be in the best interests of the Company.

B. <u>Agency Authority of Managers</u>. Subject to Section 5.3B, every Manager is an agent of the Company for the purposes of its business and affairs.

C. <u>Meetings of Managers</u>. Meetings of the Managers may be called by a Manager. All meetings shall be held upon four (4) days notice by mail or forty-eight (48) hours notice delivered personally or by telephone, telegraph or facsimile. A notice need not specify the purpose of any meeting. Notice of a meeting need not be given to any Manager who signs a waiver of notice or a consent to holding the meeting or an approval of the minutes thereof, whether before or after the meeting, or who attends the meeting without protesting prior to its commencement the lack of notice to such Manager. All such waivers, consents and approvals shall be filed with the Company records or made a part of the minutes of the meeting. A majority of the Managers present, whether or not a quorum is present, may adjourn any meeting to another time and place. If the meeting is adjourned for more than twenty-four (24) hours, notice of any adjournment shall be given prior to the time of the adjourned meeting to the Managers who are not present at the time of the adjournment. Meetings of the Managers may be held at any place within or without the State of Arizona which has been designated in the notice of the meeting or at such place as may be approved by the Managers. The Managers may participate in a meeting through use of conference telephone or similar communications equipment as long as all participating in such meeting can hear one another. Participation in a meeting in such manner constitutes a presence in person at such meeting. A majority of the authorized number of Managers constitutes a quorum of the Managers for the transaction of business. Except to the extent that this Agreement expressly requires the approval of all Managers, every act or decision done or made by a majority of the Managers is the act of the Managers. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of the Managers, if any action taken is approved by the affirmative vote of the Managers required under this Agreement. The provisions of this

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 40 of 73

Section 5.1C apply also to committees of the Managers and actions taken by such committees.

Any action required or permitted to be taken by the Managers may be taken by the Managers without a meeting if two-thirds of the Managers individually or collectively consent in writing to taking such action without a meeting, and the affirmative vote of the number of Managers that would be necessary to authorize or take such action at a meeting is obtained in the written consent. Such action by written consent shall have the same force and effect as a majority vote of such Managers.

The Managers shall hold an annual meeting, and additional meetings shall be held when necessary or called as provided herein.

5.2    Election of Managers.

A.    Number, Term and Qualifications. The Company shall initially have one (1) Manager, Timothy Johns, M.D. Subsequent Managers may be appointed by Timothy Johns, M.D.

B.    Resignation. Any Manager may resign at any time by giving written notice to the Members and remaining Managers without prejudice to the rights, if any, of the Company under any contract to which the Manager is a party. The resignation of any Manager shall take effect upon receipt of that notice or at such later time as shall be specified in the notice and, unless otherwise specified in the notice, the acceptance of the resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute his or her withdrawal as a Member.

C.    Vacancies. Any vacancy occurring for any reason in the number of Managers may be filled by Timothy Johns, M.D. However, if the vacancy is Timothy Johns, M.D., the vacancy may be filled by the affirmative vote or written consent of the Members.

5.3    Powers of Managers.

A.    Powers of Managers. Without limiting the generality of Section 5.1, but subject to Section 5.3B and to the express limitations set forth elsewhere in this Agreement, the Managers shall have all necessary powers to manage and carry out the business, property and affairs of the Company.

B.    Limitations on Powers of Managers. In addition to Section 4.7, the Managers shall not have authority to cause the Company to engage in the following transactions without first obtaining the approval of a Majority Interest of the Members:

(i)    The sale, exchange or other disposition of all or substantially all of the Company's assets occurring as part of a single transaction or plan or in multiple transactions, except in the orderly liquidation and winding up of the business of the Company upon its duly authorized dissolution.

(ii)   The merger of the Company with another entity; provided, however, that in no event shall a Member be required to become a general partner in a merger with a limited partnership without his or her express written consent or unless the agreement of merger provides each Member with the dissenter's rights described in the Act.

5.4   <u>Members Have No Managerial Authority</u>.   The Members shall have no power to participate in the management of the Company except as expressly authorized by this Agreement or the Articles of Organization, except as expressly required by the Act. Unless expressly and duly authorized in writing to do so by a Manager or Managers, no Member shall have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit or to render it liable for any purpose.

5.5   <u>Performance of Duties; Liability of Managers</u>.   A Manager shall not be liable to the Company or any Member for any loss or damage sustained by the Company or any Member unless the loss or damage shall have been the result of gross negligence or willful misconduct by the Manager. The Managers shall perform their managerial duties in good faith, in a manner they reasonably believe to be in the best interests of the Company and the Members and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. A Manager who so performs the duties of Manager shall not have any liability by reason of being or having been a Manager.

In performing their duties, the Managers shall be entitled to rely on information, opinions, reports and statements, including financial statements and other financial data, of the following persons or entities unless they have knowledge concerning the matter in question that would cause such reliance to be unwarranted and provided that the Managers act in good faith after reasonable inquiry when the need therefore is indicated by the circumstances:

(a)   one or more officers, employees or other agents of the Company who the Managers reasonably believe to be reliable and competent in the matters presented;

(b)   any attorney, independent accountant or other professional as to matters which the Managers reasonably believe to be within such person's expert competence; or

(c)   a committee upon which the Managers do not serve, duly designated in accordance with a provision of the Articles of Organization or this Agreement as to matters within its designated authority which the Managers reasonably believe to merit competence.

5.6   <u>Devotion of Time</u>.   The Managers are not obligated to devote all of their time or business efforts to the affairs of the Company. The Managers shall devote whatever time, effort and skill as they deem appropriate for the effective operation of the Company.

Case 2:14-bk-01451-MCW   Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document   Page 42 of 73

5.7    Competing Activities.    The Managers and their officers, directors, shareholders, partners, members, managers, agents, employees and Affiliates, independently or with others, may engage or invest in any business activity of any type or description, except those that might be the same as or similar to the Company's business and that might be in direct competition with the Company within a five (5) mile radius of the Company's principal place of business. Neither the Company nor any Member shall have any right in or to such other ventures or activities or to the income or proceeds derived from any such non-competitive activities. The Managers shall not be obligated to present any non-competitive investment opportunity or prospective economic advantage to the Company or the Members. The Managers shall have the right to hold any such non-competitive investment opportunity or prospective economic advantage for their own account or to recommend such opportunity to entities other than the Company. The Members acknowledge that the Managers and their Affiliates own and/or manage other businesses. The Members hereby waive any and all rights and claims which they may otherwise have against the Managers and their officers, directors, shareholders, partners, members, managers, agents, employees, and Affiliates as a result of any such non-competitive activities.

5.8    Transactions between the Company and the Managers.  Notwithstanding that it may constitute a conflict of interest, the Managers may, and may cause their Affiliates to engage in any transaction (including, without limitation, the purchase, sale, lease or exchange of any property, the rendering of any service or employment) with the Company as long as such transaction is not expressly prohibited by this Agreement and as long as the terms and conditions of such transaction are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from entities capable of similarly performing them in similar transactions between persons or entities operating at arm's length.

5.9    Payments to the Managers.  Except as specified in this Agreement, no Manager or Affiliate of a Manager is entitled to remuneration for services rendered or goods provided to the Company. The Managers and their Affiliates shall receive only the following payments:

        A.    Management Fees.  The Company may pay the Managers a fee for services in connection with the management of the Company.

        B.    Services Performed by the Managers or Affiliates.    The Company shall pay the Managers or Affiliates of the Managers for services rendered or goods provided to the Company to the extent that the Managers are not required to render such services or goods themselves without charge to the Company, and to the extent that the fees paid to such Managers or Affiliates do not exceed the fees that would be payable to an independent person or entity that is willing to perform such services or provide such goods.

        C.    Expenses.  The Company shall reimburse the Managers and their Affiliates for the actual cost of goods and services used for or by the Company. Except as otherwise provided herein, the Managers and their Affiliates shall not be

Case 2:14-bk-01451-MCW   Doc 1947  Filed 07/13/18  Entered 07/13/18 15:58:36  Desc
Main Document  Page 43 of 73

reimbursed by the Company for the following expenses; (i) salaries, compensation or fringe benefits; (ii) overhead expenses of the Managers or their Affiliates, including without limitation, rent and general office expenses; and (iii) the cost of any services or goods for which the Managers or their Affiliates are entitled to compensation from some entity other than the Company.

5.10    Acts of Managers as Conclusive Evidence of Authority.    Any note, mortgage, evidence of indebtedness, contract, certificate, statement, conveyance or other instrument in writing, and any assignment or endorsement thereof, executed or entered into between the Company and any other person or entity, when signed by a Manager, is not invalidated as to the Company by any lack of authority of the signing Manager in the absence of actual knowledge on the part of the other person or entity that the signing Manager had no authority to execute the same.

5.11    Quorum.    The presence in person of a majority of the Managers shall constitute a quorum at a meeting of the Managers. The Managers present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the loss of a quorum, if any action taken after a loss of quorum (other than adjournment) is approved by at least a majority of the Managers, or a greater percentage if required by this Agreement or the Act.

5.12    Voting.    Unless otherwise required by this Agreement or the Act, the affirmative vote of a majority of the Managers is required to approve any act of the Managers.

5.13    Officers.

    A.    Appointment of Officers. The Managers may appoint officers at any time. The officers of Company, if deemed necessary by the Managers, may also include one or more vice presidents.    The officers shall serve at the pleasure of the Managers, subject to all rights, if any, of an officer under any contract of employment. Any individual may hold any number of offices, except no individual may hold the offices of president and secretary or chief financial officer concurrently. The officers shall exercise such powers and perform such duties as specified in this Agreement and as shall be determined from time to time by the Managers.

    B.    Removal Resignation and Filling of Vacancy of Officers. Subject to the rights, if any, of an officer under a contract of employment, any officer may be removed, either with or without cause, by the Managers at any time.

    Any officer may resign at any time by giving written notice to the Managers. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Company under any contract to which the officer is a party.

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 44 of 73

A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in this Agreement for regular appointments to that office.

        C.    <u>Salaries of Officers</u>.  Subject to Sections 5.8 and 5.9, the salaries of all officers and agents of the Company, if any, shall be fixed by a resolution of the Managers.

        D.    <u>Duties and Powers of the President</u>.  The President of the Company is Timothy Johns, M.D., and shall, subject to the control of the Managers, have general and active management of the business of the Company and shall see that all orders and resolutions of the Members and Managers are carried into effect.  He shall have such powers and duties as may be prescribed by the Managers or this Agreement. The president may execute bonds, mortgages and other contracts of the Company except where the signing and execution thereof shall be expressly delegated by the Managers to some other officer or agent of the Company.

5.14    <u>Limited Liability</u>.  No person who is a Manager or officer or both a Manager and officer of the Company shall be personally liable under any judgment of a court or in any other manner for any debt, obligation or liability of the Company, whether that liability or obligation arises in contract, tort or otherwise, solely by reason of being a Manager or officer or both a Manager and officer of the Company.

## ARTICLE VI

## ALLOCATIONS OF NET PROFITS AND NET LOSSES AND DISTRIBUTIONS

6.1    <u>Allocations of Net Profit and Net Loss</u>.

        A.    <u>Net Loss</u>.  Net Loss shall be allocated to the Members in proportion to their Percentage Interests.  Notwithstanding the previous sentence, loss allocations to a Member shall be made only to the extent that such loss allocations will not create a deficit Capital Account balance for the Member in excess of an amount, if any, equal to such Member's share of Company Minimum Gain that would be realized on a foreclosure of the Company's property.  Any loss not allocated to a Member because of the foregoing provision shall be allocated to the other Members (to the extent the other Members are not limited in respect of the allocation of losses under this Section 6.1A). Any loss reallocated under this Section 6.1A shall be taken into account in computing subsequent allocations of income and losses pursuant to this Article VI so that the net amount of any item so allocated and the income and losses allocated to each Member pursuant to Article VI, to the extent possible, shall be equal to the net amount that would have been allocated to each Member pursuant to Article VI if no reallocation of losses had occurred under this Section 6.1 A.

        B.    <u>Net Profit</u>.  Net Profit shall be allocated to the Members in proportion to their Percentage Interests.

6.2    <u>Special Allocations</u>.

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 45 of 73

A.    Minimum Gain Chargeback.  Notwithstanding Section 6.1, if there is a net decrease in Company Minimum Gain during any Fiscal Year, each Member shall be specially allocated items of Company income and gain for such Fiscal Year (and, if necessary, in subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain that is allocable to the disposition of Company property subject to a Nonrecourse Liability, which share of such net decrease shall be determined in accordance with Regulations Section 1.704-2(g)(2). Allocations pursuant to this Section 6.2A shall be made in proportion to the amounts required to be allocated to each Member under this Section 6.2A.  The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(f).  This Section 6.2A is intended to comply with the minimum gain chargeback requirement contained in Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

B.    Chargeback of the Minimum Gain Attributable to Member Nonrecourse Debt.  Notwithstanding Section 6.1 of this Agreement, if there is a net decrease in Company Minimum Gain attributable to a Member Nonrecourse Debt during any Fiscal Year, each Member who has a share of the Company Minimum Gain attributable to such Member Nonrecourse Debt (which share shall be determined in accordance with Regulations Section 1.704-2(i)(5)) shall be specially allocated items of Company income and gain for such Fiscal Year (and, if necessary, in subsequent Fiscal Years) in an amount equal to that portion of such Member's share of the net decrease in Company Minimum Gain attributable to such Member Nonrecourse Debt that is allocable to the disposition of Company property subject to such Member Nonrecourse Debt (which share of such net decrease shall be determined in accordance with Regulations Section 1.704-2(i)(5)).  Allocations pursuant to this Section 6.2B shall be made in proportion to the amounts required to be allocated to each Member under Regulations Section 1.704-2(i)(4).  This Section 6.2B is intended to comply with the minimum gain chargeback requirement contained in Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

C.    Nonrecourse Deductions.  Notwithstanding Section 6.1, any nonrecourse deductions (as defined in Regulations Section 1.704-2(b)(1)) for any Fiscal Year or other period shall be specially allocated to the Members in proportion to their Percentage Interests.

D.    Member Nonrecourse Deductions.  Notwithstanding Section 6.1, those items of Company loss, deduction or Code Section 705(a)(2)(B) expenditures which are attributable to Member Nonrecourse Debt for any Fiscal Year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such items are attributable in accordance with Regulations Section 1.704-2(i).

E.    Qualified Income Offset.  Notwithstanding Section 6.1, if a Member unexpectedly receives any adjustments, allocations or distributions described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), or any other event creates a deficit balance in such Member's Capital Account in excess of such Member's share of

Case 2:14-bk-01451-MCW    Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document    Page 46 of 73
Case 2:14-bk-01451-MCW    Doc 1863   Filed 06/29/18   Entered 06/29/18 16:08:37   Page 52
Main Document    Page 46 of 73

Company Minimum Gain, items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate such excess deficit balance as quickly as possible. Any special allocations of items of income and gain pursuant to this Section 6.2E shall be taken into account in computing subsequent allocations of income and gain pursuant to this Article VI so that the net amount of any item so allocated and the income, gain and losses allocated to each Member pursuant to this Article VI to the extent possible shall be equal to the net amount that would have been allocated to each such Member pursuant to the provisions of this Section 6.2E if such unexpected adjustments, allocations or distributions had not occurred.

6.3    Code Section 704(c) Allocations.   Notwithstanding any other provision in this Article VI, in accordance with Code Section 704(c) and the Regulations promulgated thereunder, income, gain, loss and deduction for any property contributed to the capital of the Company shall be allocated solely for tax purposes among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its fair market value on the date of contribution. Allocations pursuant to this Section 6.3 are solely for purposes of federal, state and local taxes. As such, they shall not affect or in any way be taken into account in computing a Member's Capital Account or share of profits, losses or other items of distributions pursuant to any provision of this Agreement.

6.4    Allocation of Net Profits and Losses and Distributions for Transferred Interest.  If any Membership Interest is transferred or is increased or decreased by reason of the admission of a new Member or otherwise during any Fiscal Year, each item of income, gain, loss, deduction or credit of the Company for such Fiscal Year shall be assigned pro rata to each day in the particular period of such Fiscal Year to which such item is attributable (i.e., the day on or during which it is accrued or otherwise incurred) and the amount of each item so assigned to any such day shall be allocated to the Member based upon his or her respective Membership Interest at the close of such day.

However, for the purpose of accounting convenience and simplicity, the Company shall treat a transfer of or an increase or decrease in a Membership Interest which occurs at any time during a semi-monthly period (commencing with the semi-monthly period including the date hereof) as having been consummated on the last day of such semi-monthly period, regardless of when during such semi-monthly period the transfer, increase or decrease actually occurs (i.e., sales and dispositions made during the first fifteen (15) days of any month will be deemed to have been made on the 15th day of the month).

Notwithstanding any provision above to the contrary, gain or loss of the Company realized in connection with a sale or other disposition of any of the assets of the Company shall be allocated solely to the parties owning Membership Interests as of the date such sale or other disposition occurs.

6.5    Distribution of Assets by the Company.   Subject to applicable laws, including the Act, and any limitations in this Agreement, the Managers may elect from

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 47 of 73

time to time to distribute Distributable Cash to the Members, which distributions shall be to the Members in proportion to their Percentage Interests.

All such distributions shall be made only to the persons and entities who, according to the books and records of the Company, are the holders of record of the Economic Interests on the actual date of distribution. Neither the Company nor any Manager shall incur any liability for making distributions in accordance with this Section 6.5.

6.6   Form of Distribution.  A Member has no right to demand and receive any distribution from the Company in any form other than money. No Member may be compelled to accept from the Company a distribution of any asset in kind in lieu of a proportionate distribution of money being made to other Members, except upon the dissolution and winding up of the Company.

6.7   Return of Distributions.  Except for distributions made in violation of the Act or this Agreement, no Member or Economic Interest Owner shall be obligated to return any distribution to the Company or pay the amount of any distribution for the account of the Company or to any creditor of the Company. The amount of any distribution returned to the Company by a Member or Economic Interest Owner or paid by a Member or Economic Interest Owner for the account of the Company or to a creditor of the Company shall be added to the account or accounts from which it was subtracted when it was distributed to the Member or Economic Interest Owner.

6.8   Obligations of Members to Report Allocations.  The Members are aware of the income tax consequences of the allocations made by this Article VI and hereby agree to be bound by the provisions of this Article VI in reporting their shares of Company income and loss for income tax purposes.

## ARTICLE VII

## TRANSFER AND ASSIGNMENT OF INTERESTS

7.1   Transfer and Assignment of Interests.  No Member shall be entitled to voluntarily transfer, assign, convey, sell, encumber or in any way alienate all or any part of his or her Membership Interest except upon the approval of the Managers, which approval may be given or withheld, conditioned or delayed (as allowed by this Agreement or the Act) as the Managers may determine in their sole discretion. After the consummation of any transfer of any part of a Membership Interest, the Membership Interest so transferred shall continue to be subject to the terms and provisions of this Agreement and any further transfers shall be required to comply with all the terms and provisions of this Agreement. The transfer and assignment of Membership Interests under this Article VII may be further restricted pursuant to the loan covenants in the financing documents executed by the Company and a lender.

7.2   Further Restrictions on Voluntary Transfer of Interests.  In addition to other restrictions in this Agreement, no Member shall voluntarily transfer, assign, convey, sell,

Case 2:14-bk-01451-MCW    Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document   Page 48 of 73

encumber or in any way alienate all or any part of his or her Membership Interest; (i) without compliance with Section 7.1; (ii) if the Membership Interest to be transferred, assigned, sold or exchanged, when added to the total of all other Membership Interests sold or exchanged in the preceding twelve (12) consecutive months prior thereto would cause the termination of the Company under the Code, as determined by the Managers; and (iii) during his or her first two (2) years of Membership Interest ownership, except pursuant to Section 7.4.

7.3 <u>Substitution of Members</u>. A transferee of a Membership Interest shall have the right to become a substitute Member only if (i) the requirements of Sections 7.1 and 7.2 relating to approval of Members and securities and tax requirements hereof are met, (ii) such person or entity executes an instrument satisfactory to the Managers accepting and adopting the terms and provisions of this Agreement and (iii) such person or entity pays any reasonable expenses in connection with his or her admission as a new Member. The admission of a substitute Member shall not result in the release of the Member who assigned the Membership Interest from any liability that such Member may have to the Company.

7.4 <u>Family and Affiliate Transfers</u>. The Membership Interest of any Member may be transferred subject to compliance with Section 7.2, upon consent of the Managers, which shall not be unreasonably withheld, by the Member (i) by inter vivos gift or testamentary transfer to any spouse, parent, sibling, in-law, child or grandchild of the Member, or to a trust for the benefit of the Member or such spouse, parent, sibling, in-law, child or grandchild of the Member, or (ii) to any Affiliate of the Member.

7.5 <u>Effective Date of Permitted Transfers</u>. Any permitted transfer of all or any portion of a Membership Interest shall be effective as of the date the requirements of Sections 7.1, 7.2 and 7.3 have been met. The Managers shall provide the Members with written notice of such transfer as promptly as possible after the requirements of Sections 7.1, 7.2 and 7.3 have been met. Any transferee of a Membership Interest shall be subject to the restrictions on transfer imposed by this Agreement.

7.6 <u>Transfers in Violation of Agreement</u>. Any transfer of a Membership Interest in violation of this Article VII shall be null and void.

7.7 <u>Right of First Refusal</u>. Except pursuant to a Dissolution Event (which shall be governed by Article VIII) each time a Member ("Transferring Member") proposes to transfer, assign, convey, sell, encumber or in any way alienate all or part of his or her Membership Interest ("Transferring Membership Interest"), including by operation of law or other involuntary transfer other than pursuant to Section 7.4, such Member shall first offer such Transferring Membership Interest to the Company and second to the non-transferring Members ("Non-Transferring Members") in accordance with the following provisions:

A. The Transferring Member shall deliver a written notice to the Company and the Non-Transferring Members stating (i) the Transferring Member's bona fide intention to sell, assign, transfer, convey, encumber or alienate such Transferring

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 49 of 73

Membership Interest, (ii) the name and address of the proposed transferee, assignee, etc., (iii) the amount of the Transferring Membership Interest , (iv) the purchase price proposed for such Transferring Membership Interest and (v) a copy of the written, executed agreement between the Transferring Member and the proposed transferee, assignee, etc., which agreement shall be required by the Company.

        B.      The Company shall have the first right of refusal to purchase all, but not less than all of the Transferring Membership Interest for the first forty-five (45) days following the date the Company receives written notice pursuant to Section 7.7A. If the Company decides not to purchase the Transferring Membership Interest, then it shall provide written notice to the Non-Transferring Members within thirty (30) days of its decision.

        C.      Within thirty (30) days after receipt of the notice described in Section 7.7B, each Non-Transferring Member shall notify the Managers in writing of his or her desire to purchase a portion of the Transferring Membership Interest. The failure of any Non-Transferring Member to submit a notice within the applicable period shall constitute an election on the part of that Non-Transferring Member not to purchase any of the Transferring Membership Interest. Each Non-Transferring Member so electing to purchase shall be entitled to purchase a portion of such Transferring Membership Interest in the same proportion that the Percentage Interest of such Non-Transferring Member bears to the aggregate of the Percentage Interests of all of the Non-Transferring Members electing to so purchase the Transferring Membership Interest. In the event any Non-Transferring Member elects to purchase none or less than all of his or her pro rata share of such Transferring Membership Interest, then the other Non-Transferring Members can elect to purchase more than their pro-rata share. If such Non-Transferring Members fail to purchase the entire Transferring Membership Interest, the Company may purchase any remaining share of such Transferring Membership Interest.

        D.      The Company and the Non-Transferring Members electing to purchase the Transferring Membership Interest shall have the right to purchase such Transferring Membership Interest upon the price and terms of payment set forth in the notice set forth in Section 7.7A. If such notice provides for the payment of non-cash consideration, the Company and purchasing Non-Transferring Members each may elect to pay the consideration in cash equal to the good faith estimate of the present fair market value of the non-cash consideration offered as determined by the Managers.

        E.      If the Company and/or the other Non-Transferring Members elect not to purchase all of the Transferring Membership Interest set forth in such notice, then the Transferring Member may transfer the Transferring Membership Interest described in the notice to the proposed transferee, assignee, etc., providing such transfer (i) is completed within thirty (30) days after the expiration of the Company's and the Non-Transferring Members' right to purchase such Transferring Membership Interest and (ii) is made on terms no less favorable to the Transferring Member than as designated in the notice. If such Transferring Membership Interest is not so transferred, the Transferring Member must give notice in accordance with Section 7.7A.

Case 2:14-bk-01451-MCW    Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document   Page 50 of 73

7.8   <u>Payment of Purchase Price</u>. The purchase price shall be paid by the Company or the Non-Transferring Members, as the case may be, by either of the following methods, each of which may be selected separately by the Company or the Non-Transferring Members:

    A.    The Company or the Non-Transferring Members shall at the closing pay in cash the total purchase price for the Transferring Membership Interest; or

    B.    The Company or the Non-Transferring Members shall pay at the closing one-fifth (1/5) of the purchase price in which case the balance of the purchase price shall then be paid in four equal annual principal installments, plus accrued interest, and be payable each year on the anniversary date of the closing. The obligation to pay the balance due shall be evidenced by a promissory note secured by a pledge of the Transferring Membership Interest being purchased. However, the Company shall not be obligated to pay out more than ten percent (10%) of the Company's total revenues from operations in any Fiscal Year for a Transferring Membership Interest or Transferring Membership Interests. If any such payments would exceed ten percent (10%) of the Company's total revenues from operations in a Fiscal Year, the promissory note or promissory notes evidencing all of the balance(s) due and outstanding by the Company shall be extended as necessary without the need to obtain the written consent of the Transferring Member or Transferring Members involved or his or her/their legal representative(s). The unpaid principal balance shall accrue interest at the current applicable federal rate as provided in the Code for the month in which the initial payment is made, but the Company and the Non-Transferring Members shall have the right to prepay in full or in part at any time without penalty.

    C.    Notwithstanding Sections 7.8A and 7.8B, if the Transferring Member has breached this Agreement or he or she owes money to the Company or Non-Transferring Members who elect to purchase the Transferring Membership Interest, the purchase price shall be reduced by an amount equal to the damages suffered by the Company and/or the Non-Transferring Members as a result of the breach and/or the amount of money owed to the Company or such Non-Transferring Members.

7.9   <u>Closing of Purchase of Transferring Member's Interest</u>. The closing for the sale of a Transferring Membership Interest pursuant to this Article VII shall be held at the principal office of Company no later than sixty (60) days after the determination of the purchase price, except that if the closing date falls on a Saturday, Sunday or California legal holiday, then the closing shall be held on the next succeeding business day. At the closing, the Transferring Member or such Transferring Member's legal representative shall deliver to the Company and/or the Non-Transferring Members an instrument of transfer (containing warranties of title and no encumbrances) conveying the Transferring Member's Membership Interest. The Transferring Member or such Transferring Member's legal representative, the Company and the Non-Transferring Members shall do all things and execute and deliver all papers as may be necessary to fully consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

Case 2:14-bk-01451-MCW   Doc 1947   Filed 07/13/18   Entered 07/13/18 15:58:36   Desc
Main Document   Page 51 of 73

7.10 <u>Purchase Terms Varied by Agreement</u>. Nothing contained herein is intended to prohibit the Company and/or Members from agreeing upon other terms and conditions for the purchase by the Company or any Member of the Membership Interest of any Member.

## ARTICLE VIII

## CONSEQUENCES OF DISSOLUTION EVENT

8.1 <u>Dissolution Event</u>. Upon the occurrence of a Dissolution Event, the Company and/or the Members shall purchase, and the Member whose actions or conduct resulted in the Dissolution Event ("Former Member") or such Former Member's legal representative shall sell the Former Member's Membership Interest ("Former Membership Interest") to the remaining Members ("Remaining Members") as provided in this Article VIII. Notwithstanding the above, the transfer and assignment of Membership Interests under this Article VIII may be further restricted pursuant to the loan covenants in the financing documents executed by the Company and a lender.

8.2 <u>Withdrawal</u>. Notwithstanding Section 8.1, only upon the withdrawal by a Member in accordance with Section 4.3 will such withdrawing Member be treated as a Former Member, and will the Company and/or the Remaining Members be obligated to purchase and will the Former Member be obligated to sell the Former Membership Interest as provided in this Article VIII.

8.3 <u>Right of First Refusal</u>. Each time a Former Member is required to transfer, assign, convey, sell, encumber or in any way alienate all or part of his or her Former Membership Interest, including by operation of law or other involuntary transfer, such Member shall first offer such Transferring Membership Interest to the Company and second to the Remaining Members in accordance with the following provisions:

      A. The Former Member shall deliver a written notice to the Company and the Remaining Members stating the nature of the Dissolution Event within five (5) days of its occurrence.

      B. The Company shall have the first right of refusal to purchase all or less than all of the Transferring Membership Interest for the first forty-five (45) days following the date the Company receives written notice pursuant to Section 8.3A. If the Company decides not to purchase all of the Transferring Membership Interest, then it shall provide written notice to the Remaining Members within thirty (30) days of its decision.

      C. Within thirty (30) days after receipt of the notice described in Section 8.3B, each Remaining Member shall notify the Managers in writing of his or her desire to purchase a portion of the available Transferring Membership Interest. The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of that Remaining Member not to purchase any of the

Transferring Membership Interest. Each Remaining Member so electing to purchase shall be entitled to purchase a portion of such Transferring Membership Interest in the same proportion that the Percentage Interest of such Remaining Member bears to the aggregate of the Percentage Interests of all of the Remaining Members electing to so purchase the Transferring Membership Interest. In the event any Remaining Member elects to purchase none or less than all of his or her pro rata share of such Transferring Membership Interest, then the other Remaining Members can elect to purchase more than their pro-rata share. If such Remaining Members fail to purchase the entire Transferring Membership Interest, the Company shall purchase any remaining share of such Transferring Membership Interest.

8.4  Purchase Price. The purchase price for the Former Membership Interest shall be the Fixed Value. Notwithstanding the foregoing, if the Dissolution Event results from a breach of this Agreement by the Former Member or if the Former Member owes money to the Company or the Remaining Members who elect to purchase the Transferring Membership Interest, the purchase price shall be reduced by an amount equal to the damages suffered by the Company or the Remaining Members as a result of such breach and/or the amount of money owed to the Company or Remaining Members.

8.5  Payment of Purchase Price. The purchase price shall be paid by the Company or the Remaining Members, as the case may be, by either of the following methods, each of which may be selected separately by the Company or the Remaining Members:

A.  The Company or the Remaining Members shall at the closing pay in cash the total purchase price for the Former Membership Interest; or

B.  The Company or the Remaining Members shall pay at the closing one-fifth (1/5) of the purchase price in which case the balance price shall then be paid in four equal annual principal installments, plus accrued interest, and be payable each year on the anniversary date of the closing. The unpaid principal balance shall accrue interest at the current applicable federal rate as provided in the Code for the month in which the initial payment is made, but the Company and the Remaining Members shall have the right to prepay in full or in part at any time without penalty. The obligation to pay the balance due shall be evidenced by a promissory note, and if purchased by a Remaining Member secured by a pledge of the Former Membership Interest being purchased.

8.6  Closing of Purchase of Former Membership Interest. The closing for the sale of a Former Membership Interest pursuant to this Article VIII shall be held at the principal office of Company no later than sixty (60) days after the determination of the purchase price, except that if the closing date falls on a Saturday, Sunday or a Arizona legal holiday, then the closing shall be held on the next succeeding , business day. At the closing, the Former Member or such Former Member's legal representative shall deliver to the Company or the Remaining Members an instrument of transfer (containing warranties of title and no encumbrances) conveying the Former Membership Interest. The Former Member or such Former Member's legal representative, the Company and

the Remaining Members shall do all things and execute and deliver all papers as may be necessary to fully consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

8.7     Purchase Terms Varied by Agreement.  Nothing contained herein is intended to prohibit the Company and/or Members from agreeing upon other terms and conditions for the purchase by the Company or any Member of the Membership Interest of any Member.

8.8     Rights of Legal Representatives.  If a Member who is an individual dies or is adjudged by a court of competent jurisdiction to be incompetent to manage the Member's person or property, the Member's executor, administrator, guardian, conservator or other legal representative may exercise all of the Member's rights for the purpose of settling the Member's estate or administering the Member's property, including any power the Member has under the Articles of Organization or this Agreement to give an assignee the right to become a Member.  If a Member is a corporation, limited liability company, partnership, trust or other entity and is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

## ARTICLE IX

## ACCOUNTING, RECORDS, REPORTING BY MEMBERS

9.1     Books and Records.  The books and records of the Company shall be kept and the financial position and the results of its operations recorded in accordance with generally accepted accounting principles.  The books and records of the Company shall be appropriate and adequate for the Company's business.  The Company shall maintain at its principal office in Arizona all of the following:

A.     A current list of the full name and last known business or residence address of each Member and Economic Interest Owner set forth in alphabetical order, together with the Capital Contributions, Capital Account and Percentage Interest of each Member and Economic Interest Owner;

B.     A current list of the full name and last known business or residence address of each Manager, officer and assignee of any Membership Interest or Economic Interest and a description of the rights so assigned;

C.     A copy of the Articles of Organization and any and all amendments thereto together with executed copies of any powers of attorney pursuant to which the Articles of Organization or any amendments thereto have been executed;

D.     Copies of the Company's federal, state and local income tax returns and reports, if any, for the six (6) most recent Fiscal Years;

E.     A copy of this Agreement and any and all amendments thereto together with executed copies of any powers of attorney pursuant to which this

Agreement or any amendments thereto have been executed, and copies of any prior written Operating Agreement no longer in effect;

F.     Copies of the financial statements of the Company for the three (3) most recent Fiscal Years;

G.     The Company's books and records as they relate to the internal affairs of the Company for at least the current and past four (4) Fiscal Years;

H.     Minutes of the proceedings of the Members and Managers meetings, including annual, special and court-ordered meetings;

I.     Any written consents obtained from the Members and Managers for actions taken without a meeting;

J.     A statement of all contributions of the Members, including cash and a description and statement of the agreed value of any property or services contributed by each Member;

K.     A copy of all contribution agreements and contribution allowance agreements;

L.     A copy of the Company's most recent annual report delivered to the Commission;

M.     The times at which or events on the happening of which any additional contributions are made by Members; and

N.     Any events upon which the Company is to be dissolved and its affairs wound up.

9.2     Annual Statements.

The Managers shall cause to be prepared at least annually, at Company expense, information necessary for the preparation of the Members' and Economic Interest Owners' federal and state income tax returns. The Managers shall send or cause to be sent to each Member or Economic Interest Owner within 90 days after the end of each taxable year such information as is necessary to complete federal and state income tax returns and, if the Company has 35 or fewer Members, a copy of the Company's federal, state and local income tax returns for that year.

9.3     Filings. The Managers, at Company expense, shall cause the income tax returns for the Company to be prepared and timely filed with the appropriate authorities. The Managers, at Company expense, shall also cause to be prepared and timely filed with appropriate federal and state regulatory and administrative bodies, amendments to or restatements of the Articles of Organization and all reports required to be filed by the Company with those entities under the Act or other applicable laws, rules and regulations. If a Manager is required by the Act to execute or file any document fails

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 55 of 73

after demand to do so within a reasonable period of time or refuses to do so, any other Manager may prepare, execute and file that document.

9.4 <u>Bank Accounts</u>. The Managers shall maintain the funds of the Company in one or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be commingled in any fashion with the funds of any other entity.

9.5 <u>Accounting Decisions and Reliance on Others</u>. All decisions as to accounting matters, except as otherwise specifically set forth herein, shall be made by the Managers. The Managers may, rely upon the advice of their accountant as to whether such decisions are in accordance with accounting methods followed for tax purposes.

9.6 <u>Tax Matters for the Company Handled by the Managers and Tax Matters Partner</u>. The Managers shall from time to time cause the Company to make such tax elections as they deem to be in the best interests of the Company and the Members. The Tax Matters Partner, as defined in Code Section 6231, shall represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including judicial and administrative proceedings, and shall expend the Company funds for professional services and costs associated therewith. The Tax Matters Partner shall oversee the Company tax affairs. If for any reason the Tax Matters Partner can no longer serve in that capacity or ceases to be a Member or Manager, as the case may be, Members holding a Majority Interest may designate another Tax Matters Partner.

9.7 <u>Non-Disclosure of Proprietary Information</u>.

A. Each Member acknowledges that he or she has in the past, currently and in the future will obtain and have access to proprietary information and confidential trade secrets ("Trade Secrets") of the Company which have significant economic value to the Company and the other Members as a result of not being available to or known by the general public, including but not limited to (i) financial statements and other financial data, business plans, budgets and projections, (ii) marketing information, (iii) contracts, (iv) arrangements with Members, (v) rules, policies, procedures and other similar information, (vi) the business, management, administrative and professional operations, and (vii) the terms and conditions of this Agreement. Trade Secrets shall not include any information which is permitted to be disclosed pursuant to Section 9.7B.

B. Each Member shall maintain the confidentiality of all Trade Secrets and shall not disclose to any person or entity, or use or exploit any Trade Secrets for such Member's own benefit or the benefit of any person or entity, without the prior written consent of the Managers, which prior written consent may be withheld, conditioned or delayed for any reason whatsoever. However, a Member may disclose Trade Secrets, (i) to other Members of the Company or other authorized representatives in connection with the performance of professional medical services and other related duties or responsibilities on behalf of the Company, (ii) which are authorized in writing

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 56 of 73

by the Company or are otherwise required by law, and (iii) to the Member's accountant, attorney, spouse, or other persons who are related to or otherwise have a confidential or fiduciary relationship to the Member. At any time upon the Company's written request, a Member shall promptly deliver to the Company all Trade Secrets which the Member may possess or which may be under the Member's control, without retaining any copies, notes or summaries thereof. The covenants contained in this Section 9.7B shall survive a purchase of the Membership Interests of a Member, and shall remain in full force and effect.

        C.     Each Member acknowledges that the covenants and restrictions set forth in this Section 9.7 are (i) necessary, fundamental and required for the protection of the Company and the value inherent in the Trade Secrets, and (ii) relate to matters which are of a unique value to the Company. A breach of any of the covenants and restrictions will result in irreparable harm and damage to the Company which cannot be adequately compensated by monetary damages. Accordingly, in addition to all other remedies that may be available at law or in equity, the Company shall be entitled to the immediate remedy of a temporary restraining order or preliminary injunction and such other form of temporary or permanent injunctive or equitable relief as may be issued by a court of competent jurisdiction to restrain or enjoin a breach or threatened breach of all or any portion of the covenants and restrictions or to specifically enforce the provisions hereof, and the breaching party shall not raise or tender any defense that the non-breaching party has an adequate remedy at law.

## ARTICLE X

## DISSOLUTION AND WINDING UP

    10.1   <u>Dissolution</u>. The Company shall be dissolved, its assets shall be disposed of and its affairs wound up on the first to occur of the following:

        A.     At the time specified in the Articles of Organization;

        B.     Upon the entry of a decree of judicial dissolution; or

        C.     Upon the consent of the Managers.

    10.2   <u>Articles of Dissolution</u>. As soon as possible following the occurrence of any of the events specified in Section 10.1, the Managers who have not wrongfully dissolved the Company or, if none, the Members, shall execute Articles of Dissolution in such form as shall be prescribed by the State of Arizona and deliver for filing to the Commission.

    10.3   <u>Winding Up</u>. Upon the occurrence of any event specified in Section 10.1, the Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets and satisfying the claims of its creditors. The Managers who have not wrongfully dissolved the Company or, if none, the Members, shall be responsible for overseeing the winding up and liquidation of Company, shall take full

account of the liabilities of Company and assets, shall either cause its assets to be sold as promptly as is consistent with obtaining the fair market value thereof, or distributed, and shall cause the proceeds therefrom, to the extent sufficient therefor, to be applied and distributed as provided in Section 10.5. The persons winding up the affairs of the Company shall give written notice of the commencement of winding up by mail to all known creditors and claimants whose addresses appear on the records of the Company. The Managers or Members winding up the affairs of the Company shall be entitled to reasonable compensation for such services.

10.4     <u>Distributions in Kind</u>.     Any non-cash asset distributed to one or more Members shall first be valued at its fair market value to determine the Net Profit or Net Loss that would have resulted if such asset were sold for such value. Such Net Profit or Net Loss shall then be allowed pursuant to Article VI and the Members' Capital Accounts shall be adjusted to reflect such allocations. The amount distributed and charged to the Capital Account of each Member receiving an interest in such distributed asset shall be the fair market value of such interest (net of any liability secured by such asset that such Member assumes or takes subject to). The fair market value of such asset shall be determined by the Managers or the Members, or if any Member objects, by any independent appraiser (any such appraiser must be recognized as an expert in valuing the type of asset involved) selected by the Managers or liquidating trustee and approved by the Members.

10.5     <u>Order of Payment of Liabilities Upon Dissolution</u>.

A.     After payment of all known debts and liabilities of the Company pursuant to the Act, the remaining assets shall be distributed to the Members in accordance with their positive Capital Account balances, after taking into account income and loss allocations for the Company's taxable year during which liquidation occurs. Such liquidating distributions shall be made by the end of the Company's taxable year in which the Company is liquidated or, if later, within ninety (90) days after the date of such liquidation.

B.     The payment of a debt or liability has been adequately provided for if the payment has been made by either of the following means:

(i)     Payment thereof has been assumed or guaranteed in good faith by one or more financially responsible entities or by the United States government or any agency thereof, and the financial responsibility of the entity was determined in good faith and with reasonable care by the Members or Managers to be adequate at the time of any distribution of the assets pursuant to this Section 10.5.

(ii)     The amount of the debt or liability has been addressed in compliance with Arizona law.

This Section 10.5B shall not prescribe the exclusive means of making adequate provision for debts and liabilities.

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 58 of 73

10.6    Compliance with Regulations.  All payments to the Members upon the winding and dissolution of Company shall be strictly in accordance with the positive Capital Account balance limitations and other requirements of Regulations Section 1.704-1(b)(2)(ii)(d).

10.7    Limitations on Payments Made in Dissolution.   Except as otherwise specifically provided in this Agreement, each Member shall only be entitled to look solely at the assets of Company for the return of his or her positive Capital Account balance, and shall have no recourse for his or her Capital Contribution and/or share of Net Profits (upon dissolution or otherwise) against the Managers or any other Member except as provided in Article XI.

10.8    No Action for Dissolution.  Except as expressly permitted in this Agreement, a Member shall not take any voluntary action that directly causes a Dissolution Event. The Members acknowledge that irreparable damage would be done to the goodwill and reputation of the Company if any Member should bring an action in court to dissolve the Company under circumstances when dissolution is not required by Section 10.1.  This Agreement has been drawn carefully to provide fair treatment of all parties and equitable payment in liquidation of Economic Interests.  Accordingly, except where the Managers have failed to liquidate the Company as required by this Article X, each Member hereby waives and renounces his or her right to initiate legal action to seek the appointment of a receiver or trustee to liquidate the Company or to seek a decree of judicial dissolution of the Company on the ground that (a) it is not reasonably practicable to carry on the business of the Company in conformity with Articles of Organization or this Agreement, or (b) dissolution is reasonably necessary for the protection of the rights or interests of the complaining Member.  Damages for breach of this Section 10.8 shall be monetary damages only (and not specific performance), and the damages may be offset against distributions by the Company to a Member.

## ARTICLE XI

## INDEMNIFICATION AND INSURANCE

11.1    Indemnification of Agents.  Pursuant to the Act, the Company shall indemnify any person or entity who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding by reason of the fact that he or she is or was a Member, Manager or agent of the Company, or that being or having been such a Member, Manager or agent, he or she is or was serving at the request of the Company, if he or she conducted himself or herself in good faith and he or she reasonably believed (1) in the case of conduct in his or her official capacity, that his or her conduct was in the best interests of the Company; (2) in all other non-criminal cases, that his or her conduct was at least not opposed to the best interests of the Company; and (3) in the case of a criminal proceeding, he or she had no reasonable cause to believe that his or her conduct was unlawful.  The Managers shall be authorized on behalf of the Company to enter into indemnity agreements from time to time with any person or entity entitled to be indemnified by the Company hereunder upon such terms and conditions as

Case 2:14-bk-01451-MCW    Doc 1943    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 59 of 73

the Managers deem appropriate in their business judgment. The Company shall not indemnify any person or entity prohibited by the Act.

11.2   Insurance.   Pursuant to the Act, the Company shall have the power to purchase and maintain insurance on behalf of any person or entity who is or was a Member, Manager or agent of the Company against any liability asserted against such person or entity and incurred by such person or entity in any such capacity, or arising out of such person's or entity's status as a Member, Manager or agent, whether or not the Company would have the power to indemnify such person or entity against such liability under the provisions of Section 11.1 or under applicable law.

**ARTICLE XII**

**MISCELLANEOUS**

12.1   Counsel to the Company.   Each Member and Manager acknowledges that Company counsel does not represent any Member or Manager and that each Member and Manager is advised to seek independent counsel before he or she executes this Agreement.

12.2   Complete Agreement.   This Agreement, the Articles of Organization and the Subscription Agreement of the Company constitute the complete and exclusive statement of agreement among the Members and Managers with respect to the subject matter herein and supersede all prior written and oral agreements by and among the Members and Managers. No representation, statement, condition or warranty not contained in this Agreement, the Articles of Organization or the Subscription Agreement of the Company will be binding on the Members or Managers or have any force or effect whatsoever. To the extent that any provision of the Articles of Organization conflicts with any provision of this Agreement or the Subscription Agreement of the Company, the Articles of Organization shall control.

12.3   Binding Effect.   Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members and their respective successors and assigns.

12.4   Parties in Interest.   Except as expressly provided in the Act, nothing in this Agreement shall confer any rights to any persons or entities other than the Members and Managers and their respective successors and assigns, nor shall anything in this Agreement relieve or discharge the obligation or liability of any third person or entity to any party to this Agreement or give any third person or entity any right of subrogation or action over or against any party to this Agreement.

12.5   Pronouns; Statutory References.   All pronouns and all variations thereof shall be deemed to refer to the masculine, feminine or neuter and singular or plural as the context in which they are used may require. Any reference to the Code, the Regulations, the Act or other laws will include all amendments, modifications or replacements of the specific sections and provisions concerned.

12.6    Headings. All headings of this Agreement are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

12.7    Interpretation. In the event any claim is made by any Member or Manager relating to any conflict, omission or ambiguity in this Agreement, no presumption shall be implied by virtue of the fact that this Agreement was prepared by or at the request of a particular Member or Manager or the Company.

12.8    References to this Agreement. Numbered or lettered articles, sections and subsections herein contained refer to articles, sections and subsections of this Agreement unless otherwise expressly stated.

12.9    Jurisdiction. Each Member hereby consents to the exclusive jurisdiction of the state and federal courts of Arizona in any action arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement, provided such claim is not required to be arbitrated pursuant to Section 12.10. Each Member further agrees that personal jurisdiction over him or her may be effected by service of process by registered or certified mail addressed as provided in Section 12.14 of this Agreement, and that when so made shall be as if served upon him or her personally within the State of Arizona.

12.10   Disputed Matters. Except as otherwise provided in this Agreement, any controversy or dispute arising out of this Agreement, the interpretation of any of the provisions hereof or the action or inaction of any Member or Manager hereunder shall be submitted to arbitration in Maricopa County, Arizona under the commercial arbitration rules of the American Arbitration Association. Any award or decision obtained from any such arbitration proceeding shall be final and binding on the parties, and judgment upon any award thus obtained may be entered in any court having jurisdiction. No action at law or in equity based upon any claim arising our of or related to this Agreement shall be instituted in any court by any Member except (a) an action to compel arbitration pursuant to this Section 12.10 or (b) an action to enforce an award obtained in an arbitration proceeding in accordance with this Section 12.10.

12.11   Exhibits. All Exhibits attached to this Agreement are incorporated by reference into this Agreement.

12.12   Severability. If any provision of this Agreement or the application of such provision shall be held invalid, the remainder of this Agreement shall not be affected thereby.

12.13   Additional Documents and Acts. Each Member agrees to execute and deliver such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, carry out and perform all of the terms, provisions and conditions of this Agreement and the transactions contemplated hereby.

12.14   Notices. Any notice to be given or to be served upon the Company or any party hereto in connection with this Agreement must be in writing (which may include

facsimile) and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice. Such notices will be given to a Member or Manager at the address specified in Exhibit A hereto. Any party at any time may designate any other address in substitution of the foregoing address to which such notice will be given by giving five (5) days prior written notice to the other parties.

12.15 <u>Amendments</u>. All amendments to this Agreement must be in writing and signed by the parties. If any provision of this Agreement requires a greater than majority vote to approve a matter, the same greater than majority vote shall be required to amend that provision.

12.16 <u>Reliance on Authority of Person Signing Agreement</u>. If a Member is not a natural person, neither the Company nor any Member will (a) be required to determine the authority of the individual signing this Agreement to make any commitment or undertaking on behalf of such entity or to determine any fact or circumstance bearing upon the existence of the authority of such person or (b) be responsible for the application or distribution of proceeds paid or credited to persons signing this Agreement on behalf of such entity.

12.17 <u>No Interest in Company Property; Waiver of Action for Partition</u>. No Member or Economic Interest Owner has any interest in specific property of the Company. Without limiting the foregoing, each Member and Economic Interest Owner irrevocably waives any right that he or she may have to maintain any action to partition the property of the Company.

12.18 <u>Multiple Counterparts</u>. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Agreement.

12.19 <u>Attorney's Fees</u>. In the event that any dispute between the parties should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right to the prevailing party, including without limitation, reasonable attorneys' fees and expenses.

12.20 <u>Time is of the Essence</u>. All dates and times in this Agreement are of the essence.

12.21 <u>Remedies Cumulative</u>. The remedies under this Agreement are cumulative and shall not exclude any other remedies to which any person or entity may be lawfully entitled.

12.22 <u>Special Power of Attorney</u>.

      A. <u>Attorney in Fact</u>. Each Member grants the Managers a special power of attorney irrevocably making, constituting and appointing them as the Member's attorney in fact, with all power and authority to act in the Member's name and on the

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 62 of 73

Member's behalf to execute, acknowledge and deliver and swear to in the execution, acknowledgment, delivery and filing of the following documents:

        (i)      Promissory notes to be delivered pursuant to Section 3.5;

        (ii)     Security agreements to be delivered pursuant to Section 3.5;

        (iii)    UCC-1 financing statements to be delivered pursuant to Section 3.5;

        (iv)    Assignments of certificates of a Membership Interest or other documents of transfer to be delivered pursuant to Section 3.5 or in connection with the purchase of a Membership Interest pursuant to Section 3.5, Section 7.7 or Article VIII.

        (v)     Any other instrument or document that may be reasonably required by the Managers in connection with any of the foregoing or to reflect any reduction in a Member's Capital Account or Percentage Interest pursuant to Section 3.5; and

        (vi)    Any consent to the representation of the Company by counsel selected by the Managers as described in Section 12.1.

    B.    <u>Irrevocable Power</u>.    The special power granted in Section 12.22A: (i) is irrevocable, (ii) is coupled with an interest and (iii) shall survive a Member's death, incapacity, dissolution or termination.

    C.    <u>Signatures</u>.    A Manage may exercise the special power of attorney granted in Section 12.22A by a facsimile signature or original signature.

    12.23    <u>Noncompetition</u>.

    A.    <u>Prohibited Activities</u>.    If a Member transfers his or her Membership Interest pursuant to either Article VII or VIII, such Member agrees that for a period of twelve (12) months from the date of such transfer and within a five (5) mile radius of the Company's principal place of business, he or she shall not:

        (i)      Enter, directly or indirectly, into the employment of or render, directly or indirectly, any services (whether as a director, officer, agent, representative, independent contractor, consultant, advisor or otherwise), to any entity ("Competitor") which provides similar services or which otherwise competes with or carries on a similar business to that of the Company, whether such business is carried on by the Company or by a successor or assign;

        (ii)     Engage, directly or indirectly, in any such business as a Competitor;

IN WITNESS WHEREOF, the undersigned has executed this Operating Agreement this
_9th_ day of _July_, 2008.

By: _____

Title: _____Member_____

Witness #1: _____

Witness #2: _____

## INDIVIDUAL ACKNOWLEDGEMENT

Notary Public State of Arizona
Maricopa County
Nancy Murray
Expires July 13, 2008

State of Arizona

County of Maricopa

This instrument was acknowledged before me on _07/09/08_, by

_Nancy Murray_.

_____
Notary Public

My commission expires: _07/13/2008_
(Seal)

_7/16/08_

_Rec'vd #300_

_Mary D_

## EXHIBIT A

CAPITAL CONTRIBUTION OF MEMBERS AND ADDRESSES OF MEMBERS
AS OF _____, 2008

| MEMBER'S NAME | MEMBER'S ADDRESS | MEMBER'S CAPITAL CONTRIBUTION | PERCENTAGE INTEREST |
|---|---|---|---|
| _____ | | | |
| _____ | | | |
| _____ | | | |
| _____ | | | |
| _____ | | | |
| _____ | | | |
| _____ | | | |
| _____ | | | |

Case 2:14-bk-01451-MCW    Doc 1947    Filed 07/13/18    Entered 07/13/18 15:58:36    Desc
Main Document    Page 65 of 73

## APPENDIX III

DRAFT LEASE AGREEMENT

(attached hereto)

# EXHIBIT B

1  Daniel E. Garrison (Bar No. 021495)
2  Jessica Kenney Bonteque (Bar No. 026615)
   **ANDANTE LAW GROUP, PLLC**
3  Scottsdale Financial Center I
   4110 North Scottsdale Road, Suite 330
4  Scottsdale, AZ  85251
   Phone: (480) 421-9449
5  Fax: (480) 522-1515
6  Email: dan@andantelaw.com
   Email: jessica@andantelaw.com
7  *Attorneys for Gilbert Hospital, LLC*

8

9                **IN THE UNITED STATES BANKRUPTCY COURT**

10                   **FOR THE DISTRICT OF ARIZONA**

11

| | |
|---|---|
| In Re: | **Chapter 11** |
| **GILBERT HOSPITAL, LLC,** | **Case No.:  2:14-bk-01451-MCW** |
| **Debtor.** | **NOTICE OF BAR DATE FOR RESPONSES TO DEBTOR'S OBJECTIONS TO PROOF OF CLAIMS** |

16

17          **NOTICE OF BAR DATE TO RESPOND TO OBJECTION**

18          **PLEASE TAKE NOTICE** that, pursuant to Rule 3007-1, Local Rules of

19  Bankruptcy Procedure for the District of Arizona, Claimant is permitted **14 days** from

20  service of the objection to file and serve a response. Such a response must be filed with the

21  Clerk of the U.S. Bankruptcy Court, 230 N. First Ave., Suite 101, Phoenix, AZ 85003, with

22  a copy served on counsel for the Debtor at the following address:

23

24                      Jessica Kenney Bonteque
25                    **Andante Law Group, PLLC**
                       Scottsdale Financial Center I
26                 4110 North Scottsdale Road, Suite 330
27                      Scottsdale, Arizona 85251

28

If a response is timely filed, a hearing will be scheduled as the Court's calendar permits. If no timely response is filed and served, the objection may be sustained by the court without further notice or hearing. Copies of all of the following claim objections were served on June 19, 2015.

| Date Filed | DE | Description |
|---|---|---|
| 06/19/2015 | <u>936</u><br>(15 pgs) | Objection to Claim 112 Debtor's Claim Objection to Piwniczka Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>937</u><br>(10 pgs) | Objection to Claim 120 Debtor's Claim Objection to Reynolds Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>938</u><br>(10 pgs) | Objection to Claim 121 Debtor's Claim Objection to Hess Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>939</u><br>(10 pgs) | Objection to Claim 122 Debtor's Claim Objection to Quan Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>940</u><br>(10 pgs) | Objection to Claim 123 Debtor's Claim Objection to Weinstein Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>941</u><br>(10 pgs) | Objection to Claim 124 Debtor's Claim Objection to Price Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>942</u><br>(10 pgs) | Objection to Claim 125 Debtor's Claim Objection to Voorhaar Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>943</u><br>(10 pgs) | Objection to Claim 126 Debtor's Claim Objection to Maitem Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | <u>944</u><br>(10 pgs) | Objection to Claim 127 Debtor's Claim Objection to Anderson Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |

| Date Filed | DE | Description |
|---|---|---|
| 06/19/2015 | 945 (10 pgs) | Objection to Claim 143 Debtor's Claim Objection to Carley Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 946 (10 pgs) | Objection to Claim 144 Debtor's Claim Objection to Hoang Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 947 (10 pgs) | Objection to Claim 145 Debtor's Claim Objection to Mason Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 948 (10 pgs) | Objection to Claim 146 Debtor's Claim Objection to Jadlot Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 949 (10 pgs) | Objection to Claim 147 Debtor's Claim Objection to Kian Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 950 (10 pgs) | Objection to Claim 148 Debtor's Claim Objection to KHS Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 951 (10 pgs) | Objection to Claim 149 Debtor's Claim Objection to Paul Budnick Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 952 (10 pgs) | Objection to Claim 150 Debtor's Claim Objection to Thomas Budnick Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 953 (10 pgs) | Objection to Claim 151 Debtor's Claim Objection to Brian McCalley Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 954 (10 pgs) | Objection to Claim 152 Debtor's Claim Objection to Orlando Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 955 (11 pgs) | Objection to Claim 171 Debtor's Claim Objection to Hasek Investments Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT |

| Date Filed | DE | Description |
|---|---|---|
| | | HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 956 (59 pgs) | Objection to Claim 173 Debtor's Claim Objection to Steve and Bonnie McCalley Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 957 (11 pgs) | Objection to Claim 177 Debtor's Claim Objection to Haselhorst Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 958 (30 pgs) | Objection to Claim 155 Debtor's Claim Objection to Johns Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 959 (23 pgs) | Objection to Claim 136 Debtor's Claim Objection to Wangers Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (BONTEQUE, JESSICA) (Entered: 06/19/2015) |
| 06/19/2015 | 960 (92 pgs; 3 docs) | Objection to Claim 15 Debtor's Claim Objection to Wanger Proof of Claim and Notice of Bar Date for Objections filed by JESSICA KENNEY BONTEQUE of ANDANTE LAW GROUP, PLLC on behalf of GILBERT HOSPITAL, LLC. (Attachments: # 1 Exhibit Part 2 # 2 Exhibit Part 3) (BONTEQUE, JESSICA) (Entered: 06/19/2015) |

DATED this 1st day of July, 2015.

ANDANTE LAW GROUP, PLLC

By: /s/ Jessica Kenney Bonteque
Daniel E. Garrison
Jessica Kenney Bonteque
*Attorneys for Gilbert Hospital, LLC*

This is to certify that the foregoing was e-filed on July 1, 2015 in the United States Bankruptcy Court,

…and **COPIES** served the same day via ECF Notice and electronic mail as follows:

| Thomas Axelsen taxelsen@shermanhoward.com | Hillary Barnes hbarnes@asbazlaw.com | Edward Bernatavicius edward.k.bernatavicius@usdoj.gov |
|---|---|---|

| | | |
|---|---|---|
| Mark Chernoff<br>office@azfirm.net | Randy J. Aoyama<br>Michael R. Ayers<br>raoyama@hinshawlaw.com<br>mayers@hinshawlaw.com | Keith Hendricks<br>khendricks@law-msh.com |
| Bryce Suzuki<br>Kyle Hirsch<br>bryce.suzuki@bryancave.com<br>kyle.hirsch@bryancave.com | Lawrence Hirsch<br>lhirsch@psazlaw.com | Brian Huben, Dustin Branch and<br>Jessica Mickelsen<br>brian.huben@kattenlaw.com<br>dustin.branch@kattenlaw.com<br>jessica.mickelsen@kattenlaw.com |
| Carolyn Johnsen<br>CJJohnsen@dickinsonwright.com | Lisa Peters<br>lisa.peters@kutakrock.com | Joseph Kruchek<br>joseph.kruchek@kutakrock.com |
| Philip Rudd<br>prudd@polsinelli.com | David Weissman<br>dweissman@roselawgroup.com | Lori Lewis<br>LewisL01@mcao.maricopa.gov |
| Dean C. Waldt<br>Grant L. Cartwright<br>waldtd@ballardspahr.com<br>cartwrightg@ballardspahr.com | Robert Harris, Walter Ashbrook<br>and Lori Winkleman<br>robert.harris@quarles.com<br>walter.ashbrook@quarles.com<br>lori.winkelman@quarles.com | Patrick Howell<br>phowell@whdlaw.com |
| Lamar Advertising Company<br>Attn: Robert S. Bewick<br>bbewick@lamar.com | GE Healthcare<br>Gaurav Malik<br>Gaurav.Malik@ge.com | Insight Direct USA, Inc.<br>Attn: Michael Walker<br>michael.walker@insight.com |
| Ivan Esteban<br>ivanestebanc@gmail.com | Anderson & Associates, Inc.<br>Attn: Roger Simpson<br>ras@andersonexecsearch.com | Nat Palaniappan<br>natpalaniappan@yahoo.com |
| Sean O'Brien<br>spobrien@gustlaw.com | Bruce Borrus<br>bborrus@riddellwilliams.com | William Fife<br>Daniel Greenberg<br>Daren Brinkman<br>Laura Portillo<br>Kevin Ronk<br>AZ@brinkmanlaw.com<br>daren@brinkmanlaw.com<br>william@williamfifelaw.com |
| Wesley Loy<br>wsl@bowwlaw.com | Michael W. Carmel<br>michael@mcarmellaw.com | Joseph Corrigan<br>Bankruptcy2@ironmountain.com |
| Donald W. Powell<br>dpowell@cplawfirm.com | Mark Svejda<br>mark@azrealestatelawyers.com | Cynthia Switzer<br>Switzer.Cynthia@principal.com |
| Joseph Shickich, Jr.<br>jshickich@riddellwilliams.com | Michael Bach<br>michaelb@dehaan-bach.com | Michael Jones<br>mjones@ambazlaw.com |
| Rafael Zahralddin-Aravena<br>Shelley Kinsella<br>rxza@elliottgreenleaf.com<br>sak@elliottgreenleaf.com | Thomas Salerno<br>Loren Morris<br>tsalerno@gordonsilver.com<br>lmorris@gordonsilver.com | Kurt Zitzer<br>kzitzer@meagher.com |
| Warren Stapleton<br>wstapleton@omlaw.com | Rob Justman<br>rjustman@meagher.com | Gerald Shelley<br>Nancy March<br>gshelley@fclaw.com<br>nmarch@fclaw.com |

| | | |
|---|---|---|
| Office of the US Trustee<br>USTPRegion14.PX.ECF@USDOJ.GOV | | |

...and **COPIES** served the same day
via U.S. Mail as follows:

| | | |
|---|---|---|
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Dawn Carley* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Billy Joe and Tiffany Lea Anderson* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Paul Budnick* |
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Brian Hess* | Hasek Investments, LLC<br>7349 N. Via Paseo Del Sur Suite 515-257<br>Scottsdale, AZ 85258 | Kevin Haselhorst<br>5777 N. 78th Place<br>Scottsdale, AZ 85250 |
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Jane Jadlot* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Kim Hoang* | Zenji Reynolds<br>P.O. Box 51361<br>Mesa, AZ 85208 |
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Kianoush and Khousheh Kian* | Keith Hendricks<br>Moyes Sellers & Hendricks<br>1850 N. Central Avenue, Suite 1100<br>Phoenix, AZ 85004<br>Attorneys for Timothy A. Johns | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for KHS Revocable Trust 2005* |
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Brian McCalley* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Jonathan and Jannee Maitem* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for John Mason* |
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for James Price* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Jason Orlando* | Stephen J. Moriarity<br>100 North Broadway, Suite 1700<br>Oklahoma City, OK 73102<br>*Attorneys for Leo and Tonya Piwniczka* |
| Geoffrey M. Khotim<br>Nussbaum Gillis & Dinner, P.C.<br>14850 N. Scottsdale Road, Ste. 450<br>Scottsdale, AZ 85254 | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Dan Quan* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Zenji Reynolds* |
| Mark D. Chernoff<br>Chernoff Law Firm, PC<br>14300 N. Northsight Blvd., Ste. 205<br>*Attorneys for David Wanger* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Thomas Budnick* | Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for William and Mary Voorhaar* |
| Davis Miles McGuire Gardner, PLLC<br>320 N. Leroux Street, Suite A<br>Flagstaff, AZ 86001<br>*Attorneys for Phyllis Weinstein* | | |

By: /s/ Kara Gibson Schrader